CONTINENTAL STATE BANK OF BECK-
VILLE et al. v. TRABUE et al.

(Court of Civil Appeals of Texas. Texarkana.
May 26, 1912. On Motion for Re-
hearing, Oct. 10, 1912.)

**1. SALES (§ 316*)—REMEDIES OF SELLER.**

The seller of lumber did not have the
right to resume possession of it by force, be-
cause the purchaser did not pay the price as
agreed.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. §§ 890–895; Dec. Dig. § 316.*]

**2. INTEREST (§ 38*)—RATE—JUDGMENT.**

Under Sayles' Ann. Civ. St. 1897, art.
3105, providing that all judgments shall bear
interest at 6 per cent., except where the con-
tract upon which the judgment is founded
bears a specified rate greater than 6 per cent.
and not exceeding 10 per cent., when the judg-
ment shall bear interest at such greater rate,
judgment in an action on a note should bear
interest at the rate of 10 per cent. stipulated
for in the note.

[Ed. Note.—For other cases, see Interest,
Cent. Dig. §§ 79–82; Dec. Dig. § 38.*]

**3. BILLS AND NOTES (§ 530*)—JUDGMENT—
ATTORNEY'S FEES.**

Judgment in an action on a note should in-
clude the attorney's fees stipulated for therein.

[Ed. Note.—For other cases, see Bills and
Notes, Cent.Dig. §§ 1941–1944; Dec.Dig. § 530.*]

**4. LIENS (§ 15*)—PURCHASE OF PROPERTY—
NOTES OF SELLER—ASSUMPTION BY BUYER.**

An agreement made by defendant with
plaintiff, from whom he had purchased lumber
which plaintiff had previously purchased, giv-
ing purchase-money notes to a bank, by which
defendant agreed to assume plaintiff's pur-
chase-money notes, would not make defendant
liable merely as surety as to the bank, as its
rights could not be affected by defendant's
agreement with plaintiff, to which it was not
a party.

[Ed. Note.—For other cases, see Liens, Cent.
Dig. § 20; Dec. Dig. § 15.*]

**5. FRAUDULENT CONVEYANCES (§ 133*)—SALE
OF INCUMBERED GOODS—ASSUMPTION OF
DEBT.**

Sayles' Ann. Civ. St. 1897, art. 2548, pro-
viding that every mortgage or other lien at-
tempted to be given by the owners of any
stock of goods, wares, or merchandise daily
exposed to sale, in parcels, in the regular
course of the business of such merchandise,
and contemplating a continuance of posses-
sion "of such goods and control of the busi-
ness," by sale thereof by the owner, shall be
deemed fraudulent and void, is not applicable
to a purchase of the dealer's whole stock in
trade, such as lumber, where the purchaser as-
sumes payment of a debt which is a charge
on the dealer's property.

[Ed. Note.—For other cases, see Fraudulent
Conveyances, Cent.Dig. § 425; Dec.Dig. § 133.*]

**6. LIENS (§ 15*)—PURCHASE OF GOODS—AS-
SUMPTION OF NOTE—INTEREST.**

One who purchased lumber and assumed
certain purchase-money notes of the seller
was only liable on the notes for the amount
thereof, together with the 10 per cent. inter-
est stipulated therein which had accrued to
the date of the judgment in favor of the seller,
and 6 per cent. interest on such aggregate
amount, instead of 10 per cent., the interest
stipulated in the note; the liability being based
on the agreement to assume payment of the
notes, and not on the notes themselves.

[Ed. Note.—For other cases, see Liens, Cent.
Dig. § 20; Dec. Dig. § 15.*]

**7. LIENS (§ 15*)—SET-OFF.**

Upon rendering judgment against plaintiff,
the purchaser of lumber, who assumed to pay
the seller's purchase-money notes upon a prior
purchase thereof, the judgment should provide
that any payment by plaintiff on account of a
judgment against him in favor of the bank,
which advanced the purchase money to the
original seller, on a note signed by him as
well as the original seller, as well as any pay-
ment on the recovery in favor of the bank and
the original seller on the notes assumed by
plaintiff, and in favor of the bank against the
original seller thereon out of the proceeds of
the sale of the lumber, should operate as a
satisfaction pro tanto of the sum adjudged
against plaintiff.

[Ed. Note.—For other cases, see Liens, Cent.
Dig. § 20; Dec. Dig. § 15.*]

**8. LIENS (§ 15*)—ATTORNEY'S FEES.**

Where the purchaser of lumber only as-
sumed, as a part of the price, to pay his
vendor's purchase-money notes, and did not
undertake to pay attorney's fees stipulated for
therein, he cannot be charged therewith.

[Ed. Note.—For other cases, see Liens, Cent.
Dig. § 20; Dec. Dig. § 15.*]

**9. COSTS (§ 241*)—DISTRIBUTION.**

Plaintiff purchased lumber from defendant
E., for the purchase price of which E. had
given defendant bank his notes, and plaintiff
assumed the notes, but failed to pay them;
whereupon E. undertook to recover the lum-
ber by force, and plaintiff sued out an injunc-
tion, making the bank a party. The judg-
ment on appeal directed that the injunction be
perpetuated, and was in favor of the bank
against E. and plaintiff, foreclosing the lien on
the lumber, and in favor of E. against plain-
tiff for the sum plaintiff undertook to pay to
the bank, less payments made thereon. *Held,*
that the costs in the trial court for the injunc-
tion suit should be adjudged in favor of plain-
tiff against E., while the other costs in that
court should be adjudged in favor of E. and
the bank against plaintiff; costs on appeal be-
ing evenly divided against E. and plaintiff.

[Ed. Note.—For other cases, see Costs, Cent.
Dig. §§ 927–935; Dec. Dig. § 241.*]

On Motion for Rehearing.

**10. LIENS (§ 16*)—WAIVER.**

Where plaintiff, on purchasing lumber,
agreed to pay as a part of the price the sell-
er's indebtedness to a bank, secured by a lien
on the lumber, plaintiff took the lumber charg-
ed with such indebtedness, and cannot claim
that the bank, by authorizing a sale of lumber
to plaintiff, waived its lien thereon.

[Ed. Note.—For other cases, see Liens, Cent.
Dig. §§ 7–16; Dec. Dig. § 16.*]

Appeal from District Court, Panola Coun-
ty; W. C. Buford, Judge.

Action by R. E. Trabue against the Con-
tinental State Bank of Beckville and others.
From a judgment in part for each party as
stated, plaintiff and the bank took separate
appeals. Judgment set aside and rendered
as stated.

H. N. Nelson, of Carthage, for appellant.
Brooke & Woolworth, of Carthage, and
Young & Abney, of Marshall, for appellee.

WILLSON, C. J. According to findings
made by the court and a jury, supported,
we think, by testimony, the facts material

to the controversies between the parties to this litigation are as follows:

E. L. Etheridge owned a sawmill, some timber, and between 400,000 and 500,000 feet of lumber. He was indebted to the Continental State Bank of Beckville in the sum of $3,400, and interest thereon, for money borrowed of the bank to pay for timber to be used in operating the mill and other expenses of operating it. The indebtedness was evidenced by several promissory notes, made by him to said bank; each stipulating for interest at the rate of 10 per cent. per annum and 10 per cent. as attorney's fees, if suit was brought thereon. Among the notes was one for $2,500, which R. E. Trabue also had executed. $1,000 had been paid on this note, leaving due thereon $1,500 and interest. The indebtedness to the bank was secured by a verbal lien in its favor on the lumber, given by Etheridge. February 29, 1912, Trabue purchased the lumber of Etheridge, agreeing to pay him therefor the sum of $6,000 as follows (quoting from the written instrument evidencing the contract of sale): "The sum of $1,750 cash, the receipt of which is hereby acknowledged, and one note for the sum of $850, dated the same date as this contract, and due April 1, 1912, and the assumption of the payment of the sum of $3,400 due to the Continental State Bank of Beckville, Texas, and P. R. Nesbitt, together with all accrued interest and interest which may be due at the time of the payment of said indebtedness." The $850 note was made and delivered by Trabue to Etheridge as agreed on, and on the day the contract was executed Trabue delivered to Etheridge as a payment of the $1,750 cash agreed on, a draft for that sum drawn by a bank in Carthage on a bank in New Orleans. There was a controversy as to whether this draft had been paid or not at the time this suit was instituted (March 13, 1912); but the testimony was conclusive that Etheridge accepted it in lieu of cash, and that the draft was paid by the New Orleans bank March 8, 1912. At the time the contract was entered into, the indebtedness to the bank which Trabue assumed to pay was all due, except $150 thereof, evidenced by a note which matured April 1, 1912. There was a controversy as to whether Trabue's undertaking was to pay the $3,400 indebtedness to the bank at once on the making of the contract, or on June 1, 1912. Trabue claimed his undertaking was to pay same on said June 1st. The jury found that his undertaking was not to pay it on that day; and the court in effect found that his undertaking was to pay it at the time the contract was executed. The testimony was sufficient to support the findings. There was a controversy as to whether Trabue, at the time he purchased the lumber, had notice of the existence of the lien in favor of the bank. The court found that Trabue "was fully acquainted with the dealings between the bank and Etheridge," and we assume thereby intended to find that Trabue had notice of the fact that Etheridge had agreed with the bank that it should have a lien on the lumber to secure the debt to it. We think the testimony was sufficient to support such a finding. The court found that from the date (February 29, 1912) of the execution of the contract until March 12, 1912, Trabue was in actual possession of the lumber he had purchased of Etheridge, and the jury found that he had sold of that lumber 120,000 feet, of the value of $1,440. Trabue not having paid the $3,400 and interest he had agreed to pay to the bank, on March 12, 1912, Etheridge drew a draft on said Trabue in favor of the bank for same, less the amount of the $150 note referred to as not maturing until April 1, 1912. On the ground that he was not to pay Etheridge's debt to the bank until June 1, 1912, Trabue refused to pay the draft. March 13, 1912, Trabue undertook to load some of the lumber on cars and ship same. Etheridge objected to a removal of the lumber until Trabue had paid the $3,400 and interest to the bank, and, as Trabue understood it, threatened to use force to prevent him from loading and shipping any of the lumber. Trabue thereupon applied for and obtained a temporary injunction, restraining Etheridge from interfering with him in the loading, shipping, selling, or otherwise disposing of the lumber. In his answer to the petition for the injunction, Etheridge set up Trabue's agreement to pay the debt to the bank and his failure to pay it, and asked for a judgment against him for the amount thereof. He asked that the bank be made a party to the suit. The bank filed an answer setting up the notes referred to evidencing the $3,400 indebtedness to it, alleged the existence of a lien in its favor on the lumber to secure the payment thereof, and a conversion by Trabue of a part thereof, and sought a judgment against Etheridge for the amount due on the notes, against Trabue for the amount of the balance due on the $2,500 note and the value of lumber he had, as alleged, converted to his own use, and a foreclosure of the lien it asserted on the lumber as against both Etheridge and Trabue. The judgment rendered was (1) a dismissal as to one Nesbitt, who had been made a party at the instance of Etheridge; (2) in favor of Etheridge, for the use of the bank, against Trabue for the sum of $3,425.-26, being the $3,400 and accrued interest Trabue had agreed to pay the bank, and interest thereon at the rate of 6 per cent. per annum: and (3) in favor of the bank against Etheridge for the sum of $3,802.10, being said $3,400, accrued interest and attorney's fees and interest thereon at the rate of 10 per cent. per annum. By the decree the court dissolved the injunction he had granted, directed that Etheridge take and retain possession of the lumber until Trabue paid into court the sum adjudged against him,

or executed and filed a supersedeas bond, when he should deliver same to Trabue, and directed that in the event Trabue, within 20 days, did not pay into court the sum adjudged against him the lumber should be sold by the sheriff, and the proceeds be by him paid into court to await the further orders of the court, for which purpose jurisdiction of the cause was reserved. The court refused to foreclose the lien asserted by the bank against the lumber. The decree declared it should not be construed as affecting Etheridge's right to enforce by another suit payment of the note for $850, made to him by Trabue. Trabue and the bank perfected separate appeals, and each sent to this court a transcript of the record.

On the facts stated, we think the judgment should have been:

[1] 1. In favor of Trabue perpetuating the injunction theretofore granted, restraining Etheridge from interfering to forcibly prevent the removal by Trabue of the lumber he had purchased of Etheridge. Having sold the lumber and delivered the possession thereof to Trabue, Etheridge did not have a right, by force, to resume possession and control of same, because Trabue failed to pay to the bank the $3,400 and interest, as he had agreed to. Etheridge should have appealed to the courts for relief he may have been entitled to by reason of Trabue's breach of his undertaking.

[2] 2. In favor of the bank against both Etheridge and Trabue for the amount unpaid, including attorney's fees therein stipulated for, on their note to said bank for $2,500. The sum adjudged against them on this note should bear interest at the rate of 10 per cent. per annum in accordance with a stipulation therefor in the note. Sayles' Stat. art. 3105. The record discloses no reason why the bank should not recover against both makers of this note according to its terms.

[3, 4] 3. In favor of the bank against Etheridge for the sum due it, including attorney's fees, on the other notes. The sum adjudged in favor of the bank on account of these notes should bear interest, as stipulated for therein, at the rate of 10 per cent. per annum. The contention made by Etheridge, that by assuming to pay his indebtedness to the bank Trabue became primarily liable for same, and that he (Etheridge) was liable only as a surety, while tenable as between himself and Trabue, is not tenable as between him and the bank. The rights of the bank could not be affected by the agreement between Etheridge and Trabue, to which it was not a party. It had a right, as it did, to ignore that agreement and enforce, according to the terms thereof, the contract entered into between itself and Etheridge and Trabue, and the contracts entered into between itself and Etheridge.

[5] 4. In favor of the bank against both Etheridge and Trabue, foreclosing the lien asserted by it against the lumber. The findings being that the bank had a lien, and that Trabue had notice of the fact at the time he purchased the lumber, no reason is apparent why the bank was not entitled to such a foreclosure. It was and is contended that the lien asserted by the bank was void by force of a statute, as follows: "Every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of the business of such merchandise, and contemplating a continuance of possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void." Sayles' Stat. art. 2548. But we think this statute is not applicable where, as here, the sale is of a stock of lumber to a purchaser who assumes to pay the debt secured by the lien asserted. The statute evidently was intended to protect purchasers in the ordinary course of business of a dealer in goods, wares, and merchandise, and not a purchaser of the dealer's stock in trade, who assumes the payment of a debt which the dealer by contract has made a charge against the property.

[6-8] 5. In favor of Etheridge against Trabue for the sum the latter had undertaken to pay to the bank, to wit, $3,400 and interest accrued thereon to March 26, 1912 (the date of the judgment of the court below), at the rate of 10 per cent. per annum, as stipulated for in the notes evidencing the indebtedness to the bank. This recovery in favor of Etheridge should have borne interest at the rate of 6 per cent. per annum, as determined by the court below. The decree should have provided that any payment made by Trabue to the bank on account of the judgment in its favor against him on the $2,500 note, as well as any payment on the recovery in favor of the bank and Etheridge on said $2,500 note, or in favor of the bank against Etheridge on the other notes, out of the proceeds of the sale of the lumber, should operate as a satisfaction pro tanto of the sum adjudged in favor of Etheridge against Trabue. We do not think the contention made, that Etheridge should recover of Trabue attorney's fees stipulated for in the notes, should be sustained. Trabue did not undertake to pay such fees. His undertaking was only to pay the principal sums and interest thereon specified in the notes. The undertaking to pay attorney's fees, on contingencies named in the notes, was Etheridge's alone. It was never assumed by Trabue. For the breach by Trabue of his undertaking, Etheridge was entitled to recover only the sum Trabue undertook to pay. Nor do we think the contention made, that the recovery in favor of Etheridge against Trabue should bear interest at the rate of 10 per cent., the rate specified in the notes, instead of 6 per cent., the rate fixed by law, in the absence of a contract for a greater

rate, should be sustained. The recovery by Etheridge against Trabue was not on the notes, but on Trabue's undertaking to pay to the bank a specific sum, to wit, the sum due on the notes. For a breach of this undertaking, Etheridge was entitled to recover of Trabue the sum the latter agreed to pay, and interest thereon at the rate fixed by law, when there is no contract between the parties for a greater rate.

The judgment rendered by the court below will be set aside, and the judgment which should have been rendered by that court, as indicated by what has been said, will be rendered here.

[9] The costs in the court below of the suit for the injunction will be adjudged in favor of Trabue against Etheridge. The other costs in that court will be adjudged in favor of Etheridge and the bank against Trabue. One-half of the costs of this appeal will be adjudged against Etheridge and the other half against Trabue.

In disposing of the appeal, we have not thought it necessary to fully state the pleadings in the record, nor the grounds of the numerous assignments and cross-assignments presented in the briefs of the parties. Assignments in the briefs call for the rulings made; and the pleadings, we think, authorize the entry here of the judgment which the findings demanded.

### On Motion for Rehearing.

The contention made in the motion, that the judgment rendered by this court on the $2,500 note made by Trabue and Etheridge to the bank is against Trabue alone, is not supported by the record. The judgment as rendered and entered by this court is against both Trabue and Etheridge for the balance, including interest and attorney's fees, due on that note. And the judgment as rendered and entered provides that any sum paid by Trabue on account of the recovery against him on that note, as well as any sum paid on account of the recovery on that note out of the proceeds of the sale ordered of the lumber, should operate as a credit in Trabue's favor against the recovery adjudged against him in favor of Etheridge. Calling attention to this feature of the judgment is a sufficient answer, it would seem, to the complaint made that a recovery over for the amount of the attorney's fees adjudged against him was not awarded in Trabue's favor against Etheridge.

[10] The contention made, that it appeared that the bank, by authorizing Etheridge to sell same, had waived its lien on the lumber, is overruled. We do not think Trabue should be heard to urge such a contention. As a part of the purchase price he was to pay Etheridge for the lumber, he had agreed to pay Etheridge's indebtedness to the bank, secured by the lien. Under these circumstances, we think he should be held to have taken the lumber charged with that indebtedness.

We do not think Trabue has cause to complain of the adjudication as to costs made by this court. It appearing that the transcript filed by him in this court was applied for by him after a transcript obtained by the bank had been filed here, it is not clear that he might not properly have been charged with the payment of a greater proportion of the costs than was adjudged against him. The effect of the judgment entered here was to charge him with the costs in the court below, except such as were incurred in the injunction proceedings, and with one-half of the costs of the appeal, which included the costs of the transcripts filed here.

The motion is overruled.