Paul MALONE, Appellant,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee.**

No. AB2405.

Court of Civil Appeals of Texas, Houston, 14th Dist.

Dec. 17, 1980.

Rehearing Denied Feb. 4, 1981.

John R. Froeschner, Texas City, for appellant.

Walter Clay Cooke, Meredith, Donnell & Edmonds, Corpus Christi, Frank L. Skillern, Jr., Gen. Counsel, Myers N. Fisher, Asst. Gen. Counsel, Donald B. McKinley, Supervising Atty., Washington, D. C., for appellee.

Before J. CURTISS BROWN, C. J., and PAUL PRESSLER and JUNELL, JJ.

JUNELL, Justice.

This is an appeal from a summary judgment rendered for appellee Federal Deposit Insurance Corporation (FDIC) against appellant Paul Malone, the guarantor of a promissory note.

■ Malone failed to file a response to FDIC's motion for summary judgment. Therefore, this appeal is limited to review of the sufficiency of the summary judgment proof on the issues presented to the court below by FDIC's motion. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979).

FDIC was substituted as party plaintiff in a suit originally brought by South Texas bank on a promissory note against the maker, W. E. Devine, and the guarantor, appellant herein. South Texas Bank, being insolvent, was closed by vote of its Board of Directors, at which time FDIC was appointed its receiver. Thereafter FDIC in its corporate capacity purchased, among other assets and liabilities of said bank, the note and guaranty agreement which were the subject of this suit. Defendant Devine, on whom service of process was not perfected, was severed from the action after an interlocutory summary judgment in order that a final judgment might be rendered against Malone.

The facts, as stipulated by FDIC solely for purposes of the motion for summary judgment, are that Malone was visited on two separate occasions by J. Howard Wilson, who claimed to be an advisory director and loan committee member of South Texas Bank. Wilson questioned Malone about his familiarity with the E.B. Pickett No. 1 well in the South Liberty field in Liberty County, Texas, owned by defendant Devine. Malone acknowledged familiarity with the well and placed a value of approximately $20,000.00 on it. On the second visit Wilson asked Malone if he would agree to guarantee a note to be executed by Devine and collateralized by the E.B. Pickett No. 1 well. On February 14, 1975, Don Moore, Executive Vice-President of the Bank, called Malone to verify that the bank had a lien on the E.B. Pickett No. 1 well, its production

and equipment. When Malone replied that no notation of the existence of the lien appeared on the guaranty agreement he had been requested to sign, Moore advise him to add such a notation to the agreement. Malone told Moore he would not agree to sign the guaranty unless assured that if called upon to pay the note, Malone would receive clear title to the well. When Moore so assured him, Malone added the language, "COLLATERAL: E.B. Pickett Well No. 1—Production and Equipment located in the South Liberty Field, Liberty County, Texas" and executed the guaranty agreement on February 14, 1975. The guaranty agreement provides that Malone's guaranty is limited to the amount of $20,-000.00 plus "any and all expenses incurred by Bank in enforcing this Agreement," and that the Bank may, without the consent of or notice to the guarantor, sell, exchange, release, or surrender any property securing the liability guaranteed under the agreement.

The promissory note guaranteed by Malone is in the amount of $23,200.00, $20,-000.00 of which is listed as the net amount advanced and $3,200.00, as finance charges. Listed as collateral on the note is "Well No. 1 in the South Liberty Field in Liberty County, Texas—description on Security Agreement of even date."

Filed with its motion for Summary Judgment was the affidavit of Walter Clay Cooke, attorney for FDIC, in support of an award of attorney's fees in the amount of $1200.00, for the work described therein "necessary to collect the promissory note upon which this lawsuit is based." Also filed was the affidavit of Richard L. Severson, an employee of FDIC, reciting the unpaid balance on the note as of April 30, 1979, to be $28,018.40 ($20,376.00 stated to be unpaid principal and $7,642.40 stated to be accrued interest). Judgment was rendered for FDIC against Paul Malone in the amount of $28,018.40 plus $1,200.00 attorney's fees, both to bear interest at ten percent per annum from April 30, 1979, until paid.

We agree that the summary judgment proof establishes Malone's liability on the guaranty agreement, but find that his liability is limited by the terms of that agreement and the summary judgment proof to the sum of $20,000.00. We, therefore, reform the judgment and affirm it as reformed.

■ Malone's only point of error on appeal is that the grounds expressly presented to the trial court by FDIC's motion for summary judgment were insufficient as a matter of law to support summary judgment for the reason that a fact issue was raised by the summary judgment proof. He contends that a fact issue on the affirmative defense of fraud is established by the alleged oral agreement between Malone and Moore to the effect that if Malone were called upon to pay the note, he would receive clear title to the well. We hold that no fact issue was raised by such oral agreement for the reason that the trial court upon motion for summary judgment may consider only such evidence as would be admissible upon trial of the case and evidence regarding the oral agreement would be inadmissible for two reasons.

■ The provision of the guaranty agreement allowing the Bank, without notice to the guarantor and without impairing or releasing the obligation of the guarantor, to release any property mortgaged to secure payment of the guaranteed note is clearly inconsistent with the alleged oral agreement, and parol evidence is not admissible to vary the terms of a document which is clear and express in its terms. *Town North Nat. Bank v. Broaddus*, 569 S.W.2d 489 (Tex.1978).

Furthermore the evidence would be inadmissible because of 12 U.S.C.A. § 1823(e) (1978) which provides in pertinent part as follows:

No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan

or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

We hold that the oral agreement between Malone and the Bank, when measured against the above statutory standard, is not valid against FDIC because it was not in writing and did not comply with the other requirements of said statute.

The courts have used § 1823(e) to void a variety of oral agreements collateral to written guaranty agreements. For example, in *FDIC v. Vogel*, 437 F.Supp. 660 (E.D.Wis.1977), FDIC, as the owner of a promissory note purchased from FDIC as receiver of a closed bank sued to enforce a guaranty of the note. The defendants contended that the guaranty was given, at least in part, for a promise of the defunct bank to lend the defendants additional monies. The FDIC filed a motion for summary judgment on the ground that this defense was barred by § 1823(e). The court held that despite the obvious issues of fact relating to the existence of this commitment, the defense failed as a matter of law: "It is undisputed that assuming that the commitment was made, it was not written nor approved by the board of directors or loan committee. Section 1823(e) of Title 12, U.S.C., precludes such an agreement." *Id.* at 663.

*FDIC v. Waldron*, 472 F.Supp. 21 (D.S. C.1979), is also in point. In that case FDIC sued to enforce a written guaranty agreement, executed by the defendants, guaranteeing a certain indebtedness which FDIC owned by virtue of a bank closing.

The defendants argued that the debt which they had guaranteed was discharged by an agreement made subsequent to their execution of the guaranty agreement.

The court held that this defense was barred by § 1823(e). It noted:

The defense raised by the defendants is barred by 12 U.S.C. § 1823(e) because an essential element of the defense is the assertion that the guarantee agreement was intended to apply only to a single debt. This assertion conflicts with the express terms of the guarantee agreement, and there is no other agreement modifying or limiting the guarantee agreement which meets the requirements of 12 U.S.C. § 1823(e).

*Id.* at 24.

Malone argues, however, that § 1823(e) does not bar his oral agreement, citing *Riverside Park Realty Co. v. FDIC*, 465 F.Supp. 305 (M.D.Tenn.1978).

It is not necessary to include in this opinion an extended discussion of *Riverside*, but we note that that case is clearly distinguishable on its facts from the instant case and the court in its opinion in *Riverside* recognized such distinction in its discussion and apparent approval of the decision of the court in *FDIC v. Vogel*, 437 F.Supp. 660.

■ Upon review of the summary judgment proof we find error in the amount of the judgment rendered. By the terms of the guaranty agreement Malone guaranteed payment only to the extent of $20,-000.00 plus all expenses incurred by the Bank in enforcing the guaranty agreement.

The guaranty agreement was on a printed form, on which a blank space was left for insertion of words stating the extent of the guaranty. In this instance there had been typed in the blank space a provision limiting the guaranty to $20,000.00. However, just above that limitation on the guaranty there had also been typed words apparently referring to the fact that the promissory note being guaranteed was pay-

able in 24 monthly installments, and in addition the words "plus accrued interest." From an examination of the guaranty agreement itself and the other summary judgment proof, it is our opinion that the words "plus accrued interest" did not increase the limit of the guaranty above the stated $20,000.00. Therefore, we hold that FDIC was not entitled to recover the accrued interest awarded by the court below.

■ We are also of the opinion that the summary judgment award of $1,200.00 in attorney's fees cannot stand. The summary judgment proof was to the effect that attorney's fees of $1,200.00 were necessarily incurred to collect the promissory note. There was no summary judgment proof concerning expenses incurred to enforce the guaranty agreement. Malone guaranteed payment of the latter but not the former.

■ The summary judgment awarded interest at the rate of 10 percent per annum on the total amount of the judgment from the date of the hearing on the motion for summary judgment, April 30, 1979, until paid. This award of interest is erroneous in two respects. The interest should have begun to run from the date of the judgment, not the date of the hearing on the motion; and the post-judgment interest should have been at the rate of 9 percent per annum, not 10 percent. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Supp.1979).

In the instant case the summary judgment was first rendered as an interlocutory judgment and was dated May 22, 1979. After severance of W. E. Devine as a party defendant, a final judgment, dated January 11, 1980, was rendered against Malone. The amount awarded, the rate of interest payable on the judgment, and the date interest began to run, were the same in each judgment.

We hold that the summary judgment should have awarded post-judgment interest from May 22, 1979, the date of the interlocutory summary judgment, until paid. *Home Indemnity Company v. Muncy*,

449 S.W.2d 312 (Tex.Civ.App.—Tyler 1969, writ ref'd n. r. e.).

■ Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Supp.1979) allows post-judgment interest at the rate of 9 percent per annum unless "the contract upon which the judgment is founded bears a specified interest greater than nine percent per annum...." While the promissory note of Devine specified interest at a greater rate than ten percent per annum, the guaranty agreement did not specify interest at any rate. The recovery by FDIC was not on the note, but on Malone's guaranty agreement. Since Malone had not contracted to pay interest at a higher rate than nine percent, FDIC is entitled to post-judgment interest at the rate of nine percent per annum under said art. 5069–1.05. *Continental State Bank v. Trabue*, 150 S.W. 209 (Tex.Civ.App.—Texarkana 1912, writ ref'd).

We, therefore, reform the judgment as to render judgment in the amount which appears from the face of the record should have been rendered and which justice requires. *Herron v. Lackey*, 554 S.W.2d 708 (Tex.Civ.App.—Beaumont), aff'd on other grounds, 556 S.W.2d 246 (Tex.1977). Judgment is rendered for Appellee in the amount of $20,000.00 plus interest on that amount at the rate of nine percent per annum from May 22, 1979, until paid.

The judgment of the trial court is reformed as set forth above and is affirmed as reformed.

Reformed and affirmed.