ROGERS, Justice.
 

 This suit was brought to enforce liability upon a fidelity bond written by the American Bonding Company of Baltimore. It appears that Curran & Treadaway, Inc., is a corporation engaged in the real estate business in the City of New Orleans. In March, 1937, Curran & Treadaway, Inc., employed Gerard Walter O’Sullivan as a rent collector and secured from the American Bonding Company a bond, under the terms of which the bonding company obligated itself to reimburse the real estate corporation for any loss up to- $1,000 caused through any act of larceny or embezzlement committed by O’Sullivan.
 

 In November, 1937, O’Sullivan embezzled funds of 'Curran & Treadaway, Inc., his employer, in excess of the amount stipulated in the bond written by the American Bonding Company. Immediately upon the discovery of O’Sullivan’s embezzlement, notice was given the bonding company, which conducted an investigation and satisfied itself that the amount embezzled exceeded the amount of the coverage under the bond. In the course of the investigation, Mr. B. G. Curran, president of Curran & Treadaway, Inc., and Mr. P. M. Milner, attorney for the American Bonding Company, discussed the matter. As a result of the discussion and of another discus
 
 *867
 
 sion had immediately thereafter at which Mr. J. C. Otto, also an attorney and adjuster of the bonding company, was present, the representatives -of the bonding company reached the conclusion that at a time prior to the commission of the embezzlement resulting in the institution of this suit, Mr. Curran discovered that O’Sullivan had been guilty of another dishonest act. In view of their conclusion, the representatives of the bonding company declined the claim of the real estate corporation, contending that under its own terms, the bond was terminated upon discovery by Mr. Curran of the prior dishonest act committed by O’Sullivan. Curran & Tread-away, Inc., then brought this suit against the American Bonding Company for the amount of the bond given to secure plaintiff against any direct loss caused through any act of embezzlement or larceny committed by O’Sullivan while in plaintiff’s employ.
 

 The district court rendered judgment rejecting plaintiff’s demands and this judgment1 was affirmed by the Court of Appeal. 187 So. 348. Certiorari, issued on plaintiff’s application, has brought the matter here.
 

 The case presents two questions for decision — one of fact and one of law.
 

 The sixth paragraph of section “A” of the bond written by the defendant company reads as follows :
 

 “This bond shall terminate upon discovery by the employer, or, if a corporation, by an officer thereof, not in collusion with such employee, of any fraudulent or dishonest act on the part of such employee, whether in the service of the employer or otherwise.”
 

 The factual issue involves a conflict between the testimony of defendant’s witnesses, Mr. Milner and Mr. Otto, and plaintiff’s witness, Mr. Curran, relative to an alleged admission made by Mr.. Curran to Mr. Milner and Mr. Otto that prior to the embezzlement of plaintiff’s funds by O’Sullivan on which this suit is based, Curran had obtained knowledge of a prior dishonest act committed by O’Sullivan.
 

 Mr. Milner and Mr. Otto both testified that in conversations with Mr. Curran he admitted that a certain check issued by plaintiff on September 10, 1937, to the order of O’Sullivan for $250, was given for the purpose of enabling O’Sullivan to make good a shortage in his accounts with Mr. Wilson for whom, among others, he was collecting rents. Mr. Curran denied that he had made any such statement. He admitted that the check of his company for $250 represented a loan to O’Sullivan, but he testified that the check was made to enable O’Sullivan to discharge certain pressing obligations such as notes due a bank a-nd an automobile finance company. Subsequently, O’Sullivan repaid the $250 which he had borrowed from the.plaintiff company.
 

 The judge of the district court resolved this disputed question of fact in favor of the defendant and his ruling was approved by the court of appeal. We find nothing in the record to justify us in taking issue with those courts on this phase of the case.
 

 
 *869
 
 The fact having been established that Mr. Curran made the statement attributed to him by Mr. Milner and Mr. Otto, viz., that the check of his company for $250 was issued to O’Sullivan in order that he might make good a shortage in his collections for Mr. Wilson, the legal question presented for decision is whether the admission is sufficient to defeat plaintiff’s right of recovery on the bond for the reason that the admission implied a knowledge, or constituted a discovery by Mr. Curran, the President of the plaintiff corporation, of a prior dishonest act committed by O’Sullivan.
 

 The purpose of contracts of fidelity insurance is to obtain full indemnity for the acts of the person bonded, and this purpose should not be defeated unless a clear case of breach of his obligation by the person for whose protection the bond is written is presented: We do not think such a case is presented here.
 

 The defense of .the bonding company to plaintiff’s action rests solely on the assumption of its representatives that Mr. Curran understood the so-called “shortage” of O’Sullivan, to which he referred in his conversation with them, resulted from a dishonest act. This is so because the bonding company insists that the mere use of the word “shortage” by O’Sullivan in his conversation with Mr. Curran in seeking the loan necessarily was sufficient to constitute the discovery by Mr. Curran that O’Sullivan was guilty of embezzlement, and, therefore, ■of. a dishonest act.
 

 It is clear from the record that Mr. Cur-ran did not so understand. The evidence shows that at the time the loan was made O’Sullivan was not indebted in any amount to Curran & Treadaway, Inc. It further shows that the'loan was not unusual nor out of the ordinary, as Curran had previously loaned money to O’Sullivan and that these loans were always repaid. The record also indicates that O’Sullivan subsequently settled with Mr. Wilson for all rents collected for his account and that no loss resulted to Mr. Wilson from any act committed by O’Sullivan.
 

 It is to be observed that while every act of embezzlement involves a shortage, every shortage does not involve an act of embezzlement. A shortage in the accounts of an employee causing loss to an employer may result from mistake, disobedience of orders, or bad judgment, and not from any wrongful intent on the part of the employee! Thus, it has been held that an employee who becomes indebted to his employer through mistake or carelessness, or using funds of the employer for his personal use with no intent to defraud, is not guilty of embezzlement and therefore of a dishonest act within the meaning of a fidelity bond. Monongahela Coal Co. v. Fidelity & D. Co., 5 Cir., 1899, 36 C.C.A. 444, 94 F. 732, writ of certiorari denied in 1899, 175 U.S. 727, 20 S.Ct. 1023, 44 L.Ed. 339; United States Fidelity & Guaranty Co. v. Bank of Batesville, 1908, 87 Ark. 348, 112 S.W. 957; United States Fidelity & Guaranty Co. v. Overstreet, 1905, 84 S.W. 764, 27 Ky.Law.Rep. 248, Williams v. United States Fidelity & Guaranty Co., 1907, 105 Md. 490, 66 A. 495; Dixie Fire Ins. Co. v. Nelson, 1913, 128 Tenn. 70, 157 S.W. 416; Milwaukee
 
 *871
 
 Theatre Co. v. Fidelity & C. Co., 1896, 92 Wis. 412, 66 N.W. 360.
 

 The rule is stated in Couch’s Cyclopedia of Insurance Law, vol. 5, sec. 1199, p. 4355, as follows: “But a fidelity bond indemnifying against loss by any act of fraud or dishonesty on the part of a bonded employee, covers only loss from acts of fraud or dishonesty. And loss must be actually suffered by the employer in order to warrant recovery on a bond conditioned against the dishonesty of an employee. Nor does the mere fact that a shortage is found justify a finding of fraud and dishonesty. For instance, a bond guaranteeing against loss by fraud or dishonesty does not cover a mere indebtedness of the employee to the employer. And a mere technical diversion of funds does not constitute personal dishonesty.”
 

 The record discloses that O’Sullivan acted as a rent collector for several real estate agents and firms. The mere fact that the account between O’Sullivan and Wilson, one of his principals, showed an indebtedness due by O’Sullivan to Wilson was not of itself sufficient to support a charge of dishonesty against O’Sullivan.
 

 There can be no presumption of dishonesty. In the absence of proof to the contrary, the presumption is that every person is honest.
 

 The mere fact that a discrepancy exists in an employee’s accounts is not sufficient to establish dishonesty amounting to larceny or embezzlement, since the law presumes every man to be honest until the contrary is established. Couch’s Cyclopedia of Insurance Law, vol. 5, sec. 1199, p. 4357.
 

 If Mr. Curran- had reasonable grounds for considering that the so-called shortage of O’Sullivan was the result of a casual irregularity or of a mere mistake, then Mr. Curran did not conclusively become aware that O’Sullivan had been guilty of a dishonest act. It is obvious Curran did not consider that O’Sullivan had been guilty of a dishonest act at the time the loan of $250 was made, first, because of O’Sullivan’s 'earlier satisfactory relations with his company, and secondly, because he retained him in the employ of the company, —an employment which permitted the employee to handle large sums of money for the account of his employer. It is not reasonable to suppose that Mr. Curran would have done this if he had considered or believed that O’Sullivan was guilty of any breach of honesty or of any moral turpitude affecting his fidelity or moral character.
 

 In the case of Bank of Commerce & Trust Co. v. Union Indemnity Co., 174 La. 1014, 142 So. 156, the defendant bonding company issued to the plaintiff bank its policy covering loss “through any dishonest act whatever” on the part of an employee and was to expire on written notice, or “immediately upon a discovery by the insured of a default hereunder on the part of such employee.”
 

 On August 21, 1930, the cashier of the plaintiff bank was found to have taken out of the bank’s cash the sum of $150.00, for which he had placed in the till his due-bilL His salary was $150 per month and he intended to repay the amount withdrawn by services to be rendered in the ensuing month. About December 31, 1930, he was
 
 *873
 
 asked to resign, which he did. • After he left the bank’s employ it was found that he had embezzled $12,545, which he had covered up by forged, fictitious and unauthorized notes. The bonding company declined to pay the loss because, as is contended in this case, it claimed the bond had expired on August 21, 1930, when the bank discovered the shortage of $150 and failed to report it. Rejecting this defense and awarding jthe plaintiff judgment,. the court said, among other things:
 

 “We are of the opinion that the defense is without merit. The policy of June 9, 1930, covered only dishonest acts, and there could be no default on that policy except by dishonesty. And, before denouncing an employee to his bondsman as dishonest, an employer has a right to satisfy himself that the employee is in fact dishonest, and need not do so on mere suspicion. American Surety Co. v. Pauly, 170 U.S. 160, 18 S.Ct. 563, 42 L.Ed. 987.”
 

 In the Bank of Commerce case the policy provision relied on was the same as the one under consideration in this case. The defense was the same and this court found that the act of the cashier in itself was not dishonest. The legal principle is the same in both cases.
 

 There is no showing in the record that O’Sullivan took any money of Mr. Wilson with the criminal intent of depriving him of its use and benefit. On the contrary, O’Sullivan made no secret of his reason for desiring to obtain the loan at the time he asked for it. He fully informed Mr. Cur-ran of the purpose for which he desired the loan. It would seem to be almost too plain for argument that if O’Sullivan had considered he was guilty of a want of integrity or of an act of moral turpitude as an employee of Mr. Wilson, he would not have disclosed that fact to Mr. Curran by whom he was also employed in a fiduciary capacity. It is not unreasonable to suppose that in the use of the word “shortage” both O’Sullivan and Mr. Curran understood that O’Sullivan was referring to a mere indebtedness to Mr. Wilson and not to any unlawful or dishonest use of Mr. Wilson’s money.
 

 The bond written by the defendant company is to be interpreted in the light of its nature as a contract of insurance, and in view of its purpose as such, and with a great degree of liberality in favor of the insured against the insurer by reason of the insurer having framed the contract. The words in the sixth paragraph of section “A” of the bond are “any fraud or dishonest act.” These words imply positive acts of wrongdoing, the discovery of which releases the insurer from its obligation on the bond. The discovery is the important element and the question for determination in this case is, did plaintiff acquire knowledge of any positive act of dishonesty committed by O’Sullivan which, under its provisions, immediately terminated the bond? This question, we think, must be answered in the negative.
 

 In addition to the principal- amount of the bond, plaintiff claims penalties and attorney’s fees under the provisions of Act No. 37 of 1921, Ex.Sess. The second paragraph of section 3 of Act No. 37 of 1921, Ex. Sess., provides that the penalty shall not be inflicted if the defense is based up
 
 *875
 
 on just and reasonable grounds. We do not find that the- defense in this case is so unjust or unreasonable a's to require the infliction of the penalties demanded.
 

 For the reasons assigned, the judgments of the court of appeal and of the district court are annulled, and it is now ordered that there be judgment in favor of Curran & Treadaway, Inc., plaintiff, and against the American Bonding Company of Baltimore, defendant, in the full- sum of One Thousand Dollars ($1,000.00); the defendant bonding company to pay all costs.
 

 O’NIELL, C.- J., dissents.