Defendant issued to plaintiff a fidelity bond wherein it was obligated to indemnify him "against any loss of money or other personal property * * * belonging to the insured * * *, which the insured shall sustain * * * through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication or other fraudulent or dishonest act or acts committed by any one or more of the employees", etc.
During the month of April, 1942, Miss Ruth Wynn was in plaintiff's employ as cashier. On the 10th of that month she checked short $100.86. Proof of loss was submitted to defendant but payment was refused. This suit to recover the amount, plus statutory penalty and reasonable attorney's fee, followed. It is alleged that the loss was the "result of wrongful abstraction, *Page 476 
misappropriation and wilful misapplication by the said Ruth Wynn."
Defendant admits submission to it by plaintiff of a proof of loss, but in other respects the allegations of the petition are denied, particularly those which charge it with liability for payment of the alleged loss.
There was judgment for plaintiff for the amount of the loss but his demand for penalty and attorney's fee was rejected. Defendant appealed. By answer to the appeal, plaintiff prays for amendment of the judgment to the amount of his demand.
Plaintiff owns and operates a retail drug store in the City of Shreveport, in which he also vends cold drinks, lunches, etc. Customers pay the price of purchases to the cashier who is in charge of a mechanical cash register which, through manipulation of the cashier, makes a record of the price of each purchase. Each cashier is checked in and at the end of her service for the day, is checked out. To each, as she goes on duty, is entrusted $1,200 in currency. The greater part of this amount is kept in a small iron safe below the cash register, the key to which is also entrusted to the cashier on duty. A small part of the $1,200 is deposited in the drawer of the cash register to be used in making change.
The record is not entirely clear as to the number of hours Miss Wynn was on duty immediately prior to the discovery of the shortage. Plaintiff testified that her shift was from two o'clock P.M. April 9th, to the same hour the following day, but also testified that she went on duty at seven o'clock the morning of April 10th and remained so until two o'clock P.M. Anyway, the shortage was discovered when she was checked out that afternoon. The exact amount thereof was reflected from her own figures and calculation made in a book in which was recorded the necessary entries to determine the amount of cash, checks, etc., taken in by her. She received $536.22 in cash and checks but had on hand when checked out only $435.36. She offered no explanation for the shortage nor did she contend that it arose from error, mistake, or carelessness. She is not a party to this suit and was not called as a witness. No effort was made to prosecute her criminally.
Each cashier while on duty was required to keep the safe locked and to remain at her post continuously save for brief periods in visiting the restroom. When these visits occurred another employee was left in charge of the register but was not given the key to the safe.
Three days following discovery of the shortage plaintiff wrote a letter to defendant's local agency, informing it of the shortage, wherein he said:
"This letter is to notify you that on Friday, April 10, 1942, our cashier, Miss Ruth Wynn, 419 Egan Street, was short $100.86 due to her carelessness.
"We ask that you send your claim man out to investigate this matter."
Thereafter plaintiff filled out, signed, and delivered to said agency the customary form of proof of loss. As completed, it reads in part as follows, to-wit:
"It is hereby certified that the undersigned employer has sustained a loss through the Shortage in Cash Register of Miss Ruth Wynn, employed at Baumann Wholesale Drug Greenwalls Drug Company in the position of Cashier.
"The circumstances and evidence of such loss are as follows:
"Checked Cash at 2:00 P.M. and found it short by One Hundred 
86/100 ($100.86)
"The undersigned employer first had knowledge of Shortage in cash register of this employee on or about April 10th 1942."
Defendant's position is that plaintiff failed to make out his case in that he did not prove the shortage to have resulted from the dishonesty of Miss Wynn and argues that the shortage, so far as the record discloses, could have arisen from error or mistake or carelessness on her part, for which the bond provides no protection. The letter reporting the loss and the proof of loss are pointed to and relied upon as supporting this contention.
Plaintiff attempted to explain why he said in the letter that the shortage was due to the cashier's carelessness and why, in the proof of loss, he deleted the word "dishonesty" following the words "sustained a loss through the" and inserted instead the words "shortage in cash register of Miss Ruth Wynn." On objection by counsel of defendant he was not allowed to testify in explanation of the letter and proof of loss on the ground that from the face of these papers there appeared no ambiguity in language. We are not prepared to say that this ruling is correct. It is unnecessary to a decision in the case to pass specifically on the question. In *Page 477 
brief, plaintiff's counsel says that out of an abundance of caution plaintiff desired to write nothing that might possibly subject him to criminal or civil liability as regards the turpitude of Miss Wynn. We opine that this is the true reason for his action.
We do not think the language of the letter and/or proof of loss should be given the ultimate effect for which argued in view of the undisputed facts and circumstances pertinent to the shortage. If these facts and circumstances warrant the conclusion that the shortage was not the result of error, mistake or carelessness, then the irresistible conclusion must be that it arose from dishonesty or other wilful act or acts of the cashier falling within the protective conditions of the bond.
The inescapable facts are that this money was in the custody of the cashier and disappeared while she was on duty and while such custody existed; that no other person had opportunity to steal or appropriate such a large part of the money entrusted to the cashier; that even though the employee or employees supplying for Miss Wynn for short absences had been disposed to abstract the money left in the register drawer, the amount thereof could not have been nearly so much as is here involved. Anyway, had such been done to any extent by the employee, defendant would be due to indemnify plaintiff therefor under the terms of the bond, the same as regards Miss Wynn.
If the undisputed facts of this case do not establish that plaintiff sustained loss through the dishonesty of his employee, we are unable to perceive how such fact could be established except through voluntary confession of the employee.
Defendant cites and relies upon: Crescent Cigar Tobacco Co. v. National Casualty Co., La.App., 155 So. 505, and Curran 
Treadaway, Inc., v. American Bonding Co. of Baltimore,193 La. 763, 192 So. 335.
The facts of these cases easily differentiate them from those of the instant case. In the first of the cited cases, Bunch, the employee peddler, stoutly denied appropriation of the missing goods entrusted to him and supported his position by testimony and reasoning sufficient to repel any inference of dishonesty on his part.
In the second case, it was held, as is the law generally, that discrepancies in an employee's accounts do not necessarily warrant the conclusion that the employee is guilty of fraud or dishonesty, under the terms of a fidelity bond, in the handling of the employer's money.
In the present case, as said before, the employee checked herself short and not to this day, so far as the record reveals, has she offered any excuse for her breach of trust or attempted to mitigate the seriousness of her offense. If innocent of wrongdoing, it is inconceivable that she did not stoutly assert the same when the shortage was discovered and persist therein before the courts in the hope of effacing the stigma arising from the facts.
Plaintiff relies upon Act 37 of 1921, Ex. Sess., to recover statutory penalty of fifty per cent (50%) and reasonable attorney's fee. It is provided in Section 3 of this Act that such penalties should not be inflicted in a case when the court finds that the defense thereto is based upon "just and reasonable grounds".
Penal statutes should only be enforced when the facts of the case clearly warrant such action. Statutes of this character are looked upon by courts generally with disfavor. We have no hesitancy in the present case in holding that the penalties should not be inflicted as the defendant had "just and reasonable grounds" to oppose payment of the shortage and force a judicial determination of that issue.
For these reasons, the judgment appealed from is affirmed, with costs. *Page 524