LEAR, Judge.
This case comes up on an appeal from a judgment rendered against defendant on an employee fidelity bond, or blanket crime policy, admittedly issued by defendant to cover the employees of numerous affiliated corporations. The bond provided for a limitation of coverage in the sum of $10,000.
The facts are undisputed. On the second day of November, 1960, one Milton Lee Walden pleaded guilty to a charge of theft in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. He was sentenced to be confined in the Louisiana State Penitentiary at hard labor for five years, this sentence being suspended and the accused placed on supervised probation, a condition of the probation being that the accused make full restitution. On June 9, 1961, the suspension of sentence and probation were revoked and it was ordered that the sentence imposed on November 2, 1960, be executed.
In 1961 Mr. Norman Martin, an officer or director of most of the affiliated Martin corporations became interested in Walden and procured his parole from Angola. Walden was immediately employed by several of the affiliated corporations including Verne-co, Inc. and Roy O. Martin Retirement Trust, the two petitioners in the case now before us. It was stipulated that Walden began his employment in November of 1961 and the coverage afforded by the bond sued upon began on July 14, 1962.
On October 22, 1963, Walden secured a pardon from the Governor of the State of Louisiana.
In December, 1964, it was discovered that Walden had been misappropriating cash of Roy O. Martin Retirement Trust, and forging, altering and duplicating checks of Verneco, Inc.
Defendant refused to honor a demand for payment under its fidelity bond on the basis of Walden’s trial record and an exclusion contained in its policy which provided as follows:
“The coverage of this policy shall not apply to any employee from and after the time that the insured or any partner or officer thereof not in collusion with such employee shall have knowledge or information that such employee has committed any fraudulent or dishonest act in the service of the insured or otherwise, whether such act be committed before or after the date of employment by the insured.”
Plaintiffs objected to the application of this exclusionary clause to Walden on three grounds. First, it was contended that the clause was not intended to apply to a case where an employee has committed a fraudulent or dishonest act prior to his employment by the insured employer. Secondly, it was contended that the defendant had a duty to make some investigation as to the character and past history of the employees to be covered by the bond, and that if it failed to make that investigation (which it admittedly failed to do) then the surety would be prevented from being discharged from liability. Thirdly, it was contended that the pardon granted by the Governor of Louisiana on October 23, 1963, completely did away with Walden’s previous conviction and blocked out the existence of his guilt to the extent that he had never committed any fraudulent or dishonest act within the meaning of the exclusion clause.
The defendant stood on the language of the clause, contending that it was unambiguous and applicable to the facts of this case, and asked to be relieved of liability.
The trial court gave judgment aggregating $10,000 against the defendant in favor of both plaintiffs. It pointed out that neither party was able to cite him a case in point in Louisiana or any of the jurisdictions of our sister states. The district judge, however, felt that this matter was explained and should be governed by a case decided by the Supreme Court of Maine in 1941; namely, Reliable Furniture Co. v. Union Safe Deposit and Trust Co. of Delaware, 138 Me. 87, 21 A.2d 834.
However, since the facts of that case are not the same as the factual situation with *830 which we are confronted, and since the exclusion clause in that bond was vastly different in both language and import from the exclusion clause contained in the bond sued upon here, we must disagree with his conclusion that we should follow the Supreme Court of Maine.
The trial court further said this:
“The Court is of the opinion that the exclusion does not apply in this case by its very wording. The exclusion contemplates either the commission of a fraudulent or dishonest act subsequent to the issuance of the insurance, or the discovery, after the issuance of the policy, that an employee had committed a dishonest act prior to his employment.”
The Court went on to find that the bond and the clause in question was not clear and concise, but on the contrary was ambiguous and therefore must be interpreted against the interest of the insurance company. He rejected the argument of plaintiff that the defendant’s failure and refusal to pay was unreasonable, arbitrary or capricious, and the trial court held that it was not.
Exclusionary clauses in fidelity bonds of the nature of the one with which we are here dealing are neither contrary to prohibitory law nor contra bonos mores. See J. S. Fraering, Inc. v. Employers Mutual Liability Ins. Co. of Wisconsin, 5 Cir., 242 F.2d 609, wherein it was stated:
“The requirement that the bond is deemed cancelled as to any employee upon discovery of dishonesty is not an uncommon one. 50 Am.Jur. 1125, Suretyship Sec. 333. It is a reasonable one. It is applicable here. The Supreme Court of Louisiana has, on two occasions, recognized and tacitly approved bond provisions such as are before us although in each of the cases it was found that the employee conduct was not fraudulent or dishonest and the bond coverage was not cancelled. Bank of Commerce and Trust Co. v. Union Indemnity Co., 174 La. 1014, 142 So. 156; Curran & Treadaway v. American Bonding Co., 193 La. 763, 192 So. 335.”
Being satisfied with the legality and the viability of the clause in question, we must disagree with the trial court that it is ambiguous or misleading in any respect, and we must reject the contention of the attorney for plaintiff to the effect that the language of this clause must be construed to apply only to fraudulent or dishonest acts committed by the employee after the issuance of the bond. If this had been the intent of the parties, such a proviso could have been very easily incorporated into the exclusion clause. This’ court feels that the language of the clause is simple and concise and meaningful and by its very terms excludes from coverage any employee who has committed an act fraudulent or dishonest in its import either in the service of the insured or in the service of anyone else, whether such act was committed before he was employed by the insured or after he was employed by the insured.
This brings us to the contention of petitioner that it was incumbent upon the defendant insurer to make an active investigation into the character and history of the individual employees or, in default thereof, waive the language of the bond itself. This policy of insurance or fidelity bond is a contract between the parties and, subject to statutory limitations, constitutes the law of the case as between those parties. It must be interpreted as any other contract and where the language clearly expresses the will and intention of the parties, it will be enforced as written. See LSA-C.C. Arts. 1901, 1945 and 1946; Albritton v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111; Nyman v. Monteleone-Iberville Garage, 211 La. 375, 30 So.2d 123.
There has been no authority cited nor any provision of this contract pointed out by which defendant was required to investigate each individual employee to see and determine whether or not that employee had a background of fraud and dishonesty. *831 On the other hand, the petitioners, being perfectly capable of contracting in the eyes of the law, are deemed to acquaint themselves with the terms and provisions thereof. The exclusion clause, we think, does not require the petitioners to conduct any type of investigation into the character and background of their individual employees, but if they have or come into possession of such knowledge or information, as distinguished from mere rumor and speculation, this court feels that it is incumbent upon them to either remove that employee from a position of trust or provide coverage for him either by rider or independent fidelity bond. After all, actual knowledge or reliable information on the part of the employer is an integral part of the exclusion clause under consideration.
Plaintiffs’ argument that the pardon granted to Walden makes him innocent of any prior fraudulent act. The brief cites Ex parte Garland, 4 Wall. 333, 380, 18 L.Ed. 366, which says: “A pardon reaches both the punishment prescribed for the defense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense.”
This language is very probably the law of the land, but if read closely it does not apply in the case at bar. For example, the pardon does not change the nature of the act performed by the employee and it is only ‘in the eye of the law’ that the offender is deemed as innocent as if he had never committed the offense. Nowhere does it say that persons contracting in relation to the pardoned offender cannot take notice of his previous offense and make that previous offense a condition of their agreement. To strain this language to that degree would be to deny reality.
For the reasons above assigned, the judgment of the lower court must be reversed and judgment rendered herein in favor of defendant, dismissing the petition of plaintiffs-appellees.
Reversed and rendered.