PATTERSON, Justice.
This is an appeal from a judgment of the Circuit Court of Monroe County wherein St. Paul Fire & Marine Insurance Company was held liable to the appellee under the provisions of a fidelity bond.
The record discloses that appellee, Gordon R. Comer, d/b/a Comer Packing Company (hereinafter referred to as Comer), is engaged in the business of processing meat products and offering them for sale. In furtherance of this business it was Comer’s custom to employ route salesmen to solicit orders from prospective customers and to collect the accounts when due.
In 1961 Comer employed A. D. Robbins as a salesman for the territory of Pontotoc, Tippah, Lafayette, Marshall, and Benton Counties. This employment continued until the latter part of March 1963 when Robbins was discharged by Comer because of a shortage in his account. Thereafter Robbins repaid Comer $600, the amount of the shortage. Subsequently Robbins was requested by Comer to return to his former position as a route salesman. As a condition precedent to reemployment, Comer required Robbins to obtain a fidelity bond. The purpose of the bond was to insure Comer against any loss which might occur as the result of any dishonest or fraudulent act of the employee in the future. Robbins complied by applying for bond with an insurance agency who placed the policy with St. Paul Fire & Marine Insurance Company (hereinafter referred to as St. Paul), the appellant. The bond was payable to Comer in the principal amount of $3,000 for any losses caused by any fraudulent or dishonest acts of the covered employee.
Prior to the issuance of the bond St. Paul made no inquiry of Comer as to the character or business reputation of Robbins nor did Comer offer any information to it concerning the previous shortage of Robbins. As a matter of fact, the application for the bond, the premium payment, and the issuance of the bond was a transaction entirely between Robbins, the insurance agency, and St. Paul. Though it was the beneficiary in the bond, Comer did not participate in its acquisition.
The accounts of Robbins became delinquent in 1965. After learning of the delinquency, Comer discharged Robbins and directed its accountant to make an audit of the employee’s accounts.
The audit disclosed a shortage in excess of $3,000. This result was reached by comparing the paid receipts for merchandise delivered to the sums received by the company in payment. Numerous customers testified they had paid Robbins for the products purchased from him. This testimony was corroborated by the introduction of paid receipts signed or initialed by Robbins. The bookkeepers of Comer testified that the funds collected from these accounts were not received by the company.
Thereafter Comer notified St. Paul of the loss resulting from Robbins’ employment and requested payment under the bond. Payment was refused, precipitating this suit which resulted in judgment against St. Paul for the amount of the bond.
The issues to be determined by this Court are whether there was sufficient evidence to establish a shortage in Robbins’ accounts with Comer as found by the trial court, and if so, whether Comer’s failure to notify St. Paul of Robbins’ previous shortage nullified St. Paul’s obligation.
We have studied the record in scrupulous detail and are of the opinion that there is conclusive evidence from numerous witnesses to establish the shortage of Robbins. In fact, from the evidence the trial court could hardly have found to the contrary. The contention of the appellant that there is insufficient evidence to support the finding of the trial court is therefore without merit, in our opinion.
*861 The appellant relies on Frank Gardner Hardware & Supply Company v. St. Paul Fire & Marine Insurance Company, 245 Miss. 320, 148 So.2d 190, 4 A.L.R.3d 1190 (1963), and McGee v. Maryland Casualty Company, 240 Miss. 447, 127 So.2d 656 (1961), to establish its contention that Comer was obliged to advise St. Paul of Robbins’ previous defalcations and that upon its failure to do so, the bond was ineffective. In Gardner the Court, in denying coverage, noted that employees who were known by the employer to have committed fraudulent or dishonest acts were excluded under the terms of that policy and that the employer, who requested the coverage, upon inquiry by the insurer affirmatively misrepresented a previous embezzlement of its employee. The case is not authoritative since the terms of the fidelity bond presently considered provide that the fraudulent and dishonest act of the covered employee terminates the policy. In short, in Gardner, the fraudulent acts excluded coverage. The present policy terminates coverage necessarily implying coverage from the issuance until termination by fraud or dishonest acts. We note also that in Gardner the employer obtained a group policy for his employees and thus had a duty to disclose any fraudulent or dishonest act of his employees then known to him, whereas, the employee here sought individual coverage separate and apart from the employer, the latter’s relation to the transaction being merely an antecedent request for coverage prior to employment from which no duty resulted absent inquiry. The facts, as well as the terms of the policies, clearly distinguish Gardner from the case at hand. McGee, supra, is distinguished for the same reasons.
The appellant also cites Verneco, Inc. v. Fidelity & Casualty Company of New York, La.App., 207 So.2d 828 (1968), in support of its contention that Comer owed a duty to disclose its knowledge of Robbins’ former malfeasance to it. The terms of the fidelity bond there under consideration contained in part the following:
The coverage of this policy shall not apply to any employee from and after the time that the insured or any partner or officer thereof not in collusion with such employee shall have knowledge or information that such employee has committed any fraudulent or dishonest act in the service of the insured or otherwise, whether such act be committed before or after the date of employment by the insured. 207 So.2d at 829.
'The Court’s language in discussing the policy indicates beyond doubt that it was there considering an exclusionary clause as the Court stated:
* * * The exclusion clause, we think, does not require the petitioners to conduct any type of investigation into the character and background of their individual employees, but if they have or come into possession of such knowledge or information, as distinguished from mere rumor and speculation, this court feels that it is incumbent upon them to either remove that employee from a position of trust or provide coverage for him either by rider or independent fidelity bond. After all, actual knowledge or reliable information on the part of the employer is an integral part of the exclusion clause under consideration. 207 So.2d at 831.
We are of the opinion that this case is not controlling as it bespeaks of terms in a policy quite different from those before this Court.
Under the facts and circumstances of this case we can only conclude that Comer was under no duty to the appellant, absent a request, to volunteer information as to Robbins’ prior defalcations. The dereliction, if any, was the appellant’s own neglect to inquire into the prospective employee’s background.
*862 We are of the opinion there was no error in the judgment of the trial court and that it should be affirmed.
■ Affirmed.
GILLESPIE, P. J., and JONES, INZER, and ROBERTSON, JJ., concur.