(113 So. 779)

No. 27073.

## PEOPLE'S STATE BANK v. UNITED STATES FIDELITY & GUARANTY CO.

May 23, 1927. Rehearing Denied July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. **Insurance** ⟨⟩539(5)—Bank's neglect to notify surety of cashier's embezzlement of certain item held not to avoid entire bond, where surety was not called on to pay such item.

Where bond indemnifying bank for defalcations of its cashier was limited to specific acts of fraud or dishonesty amounting to embezzlement or larceny and became void only as to particular acts of the cashier falling under the bond and coming to the knowledge of the bank, if the surety was not notified as to such act in accordance with the bond, neglect of bank to notify surety of act of cashier's embezzlement of a certain amount in 1913 *held* not to avoid entire bond, where bank did not discover defalcation until 1915 and surety was not called to pay such embezzled item.

2. **Insurance** ⟨⟩539(1)—Notice to surety that exact sum of cashier's shortage would be reported held timely within requirement that it be given "at earliest practical moment."

Where shortage in one account of bank cashier was discovered on March 15, and on April 30, at called directors' meeting of bank, cashier admitted a shortage in his accounts and requested delay to make it good, and May 5 shortage was reported to assistant state bank examiner, notice to surety on that date that cashier admitted embezzlement of named amount, but that as soon as exact amount was ascertained surety would be notified, *held* timely within bond requiring that notice be given

surety on discovery of defalcations "at the earliest practical moment."

3. **Contracts** ⟨⟩318—Forfeitures must find support in law in manner that leaves no doubt as to right to their exercise.

Forfeitures are not implied and must find support in law in manner that leaves no doubt as to the right to their exercise.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by the People's State Bank against the United States Fidelity & Guaranty Company. From a judgment for the Bank of Gueydan, as assignee of plaintiff bank, defendant appeals. Affirmed.

Spearing & Mabry, of New Orleans, for appellant.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellee and intervener.

LAND, J. The People's State Bank instituted the present suit against defendant company to recover the sum of $6,265.09 on a bond for $10,000, issued by said company to plaintiff bank, and guaranteeing to the bank, as employer, the reimbursement of such pecuniary loss as might be sustained through any act of fraud or dishonesty on the part of its cashier, R. J. Robichaux, which might amount to embezzlement or larceny.

Judgment was rendered in the lower court in favor of the Bank of Gueydan, assignee of the People's State Bank, in the sum claimed, with legal interest thereon from January 10, 1916, until paid.

From this judgment defendant company has appealed.

Plaintiff bank has set out in its petition seven items of alleged shortage on the part of its cashier in his cash and accounts, aggregating the amount sued for. The evidence in the case, in our opinion, establishes with reasonable certainty that the acts of embezzlement charged occurred during the continuance of the bond.

[1] The defenses urged by defendant company to the present suit are purely technical and are twofold:

First. That said bond became void as to the claims made under it because of the failure of plaintiff bank, its officers, and directors, or any of them, to notify respondent of the occurrence of any such acts immediately after they came to the knowledge of the plaintiff bank, its officers, or directors.

Second. That said bond became void because of the falsity of certain representations and promises made by plaintiff bank relative to the duties and accounts of its cashier, and which were expressly warranted to be true in the bond.

It is provided in the bond:

"That on the discovery *of any act capable of giving rise to a claim hereunder*, the employer shall, *at the earliest practical moment*, give notice thereof to the company, and any claim made under this bond shall be in writing addressed to the company at its head office in the city of Baltimore, and shall within three months after the discovery, at the employer's expense, furnish to the company reasonable particulars and proofs of the correctness of said claim, and such particulars and proofs of the correctness of said claim, if required, shall be verified by affidavit."

The defendant company complains bitterly that it was not notified of an embezzlement of $400 committed by Robichaux, as cashier, in the year 1913, and covered up by him by placing in the portfolio of the bank a note purporting to be signed by Lancon, Bourque, and Lemaire, who are shown to be fictitious persons.

Upon the discovery of this defalcation, the bank demanded of Robichaux a genuine note, which was signed by A. A. Le Jeune, and which was tendered by Robichaux to the bank February 16, 1915, the note of Lancon et al. having been falsely made by Robichaux about eighteen months or two years before the date of the Le Jeune note.

It appears from the record that suit has been instituted upon the Le Jeune note in the

164 LA.—4

district court of Vermillion parish by the "People's State Bank in liquidation."

It is clear, therefore, that defendant company is not called upon in the present suit to pay this item of $400 as an act of embezzlement, recoverable under the bond in this case, but the contention of said company is that the entire bond has become void because of the failure of plaintiff bank to give notice of this particular act of embezzlement.

It is not so "nominated in the bond," which declares that:

"This bond will become void *as to any claim* for which the company would otherwise be liable, if the employer shall fail to notify the company *of the act or omission out of which said* claim shall arise immediately after it shall come to the knowledge of the employer," etc.

The bond in this case by no means covers "a multitude of sins," but is expressly restricted to the reimbursement of "such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position, amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term," etc.

The bond issued to plaintiff bank by defendant company is one, therefore, of liability, limited to specific acts of fraud or dishonesty amounting to embezzlement or larceny, and becomes void only as to the particular act of the employee falling under the bond, and coming to the knowledge of the employer, if the bonding company is not notified as to such act in accordance with the bond.

It is clear, therefore, that the neglect of plaintiff bank to advise defendant company as to the act of embezzlement of its cashier in the year 1913 does not avoid the bond in this case as to the specific items involved in the present suit, unless there has been failure on the part of plaintiff bank to give such notice as is required under the bond.

[2] The bond sued upon was originally is-

sued to cover the period from June 30, 1913, to June 30, 1914, and on March 15, 1914, was extended from June 1, 1914, to June 1, 1915.

The Stensel and White note for $3,500 is of date March 1, 1915. It is admitted by Robichaux, in his answers to the interrogatories propounded to him in behalf of plaintiff bank, that this note was given to him by its makers for his personal use, that the note was never discounted or purchased by the bank, but that he placed the note in the portfolio of the bank to cover up his shortage of $3,500 at the time.

The regular auditor of the bank made a statement of its condition at the close of business on March 15, 1915. This report was dictated March 23d, and was mailed to the president of the bank March 29, 1915.

. The cash was counted by the auditor, and the portfolio of the bank was examined by him and contained at the time the Stensel and White note. No irregularities or shortages were then detected.

As the finance committee of the bank had not approved any loan to Stensel and White, the president of the bank became suspicious on finding this note in the portfolio in the audit of March 15, 1915, and, upon investigation, this particular shortage was discovered. The board of directors was called together, without unnecessary delay, Friday afternoon, April 30, 1915. Robichaux appeared before the directors that afternoon, admitted a shortage in his accounts, and requested a reasonable delay to make it good. Under a promise of reimbursement to the bank, the cashier left Gueydan for Jeanerette to raise the necessary funds, but, having failed in his efforts, returned to Gueydan Monday evening, May 3, 1915. The board of directors of the bank met that evening, and decided to take the matter up with the assistant state bank examiner, Mr. Simms, who resided in New Orleans. The president of the bank came to New Orleans the following day, Tues-

day, May 4, 1915, and reported to Mr. Simms Wednesday, May 5, 1915. On the same day, the assistant state bank examiner dictated the following notice to defendant company, which was signed by the president of plaintiff bank:

"People's State Bank, Gueydan, La.

"Gueydan, La., May 5, 1915.

"United States Fidelity & Guaranty Co., Baltimore, Md.—Dear Sirs: This is to notify you, in accordance with the requirements of your bond No. 2417–13, dated July 3, 1913, and its renewal No. 303561–13, dated March 15, 1914, that R. J. Robichaux, the cashier of this bank, bonded to this bank by you, has confessed to the embezzlement of about $4,700.

"Mr. Robichaux has been suspended from his duties and an examination of the bank's books has been ordered to ascertain exactly the amount of his shortage. As soon as this is ascertained, you will be notified promptly.

"Please acknowledge receipt of this and greatly oblige,

"Yours very truly,
                    People's State Bank,
"[Signed]    E. E. Broussard, President."

On May 7, 1915, the assistant state bank examiner repaired to Gueydan to make an examination of the People's State Bank, and discovered the various items of shortage sued for, amounting to the sum of $6,265.09.

The defalcations of Robichaux, as cashier, began as early as May 24, 1914. They were covered up by false entries, and were unknown to the officers and directors of the bank until the disclosures made in this case.

It is provided in the bond:

"That on the discovery of any act capable of giving rise to a claim hereunder, the employer shall, *at the earliest practical moment*, give notice thereof to the company," etc.

It was not practical to give notice of the various items of shortage in this case, even on May 5, 1915, as they were not all discovered until after May 7, 1915, by the assistant state bank examiner. The president of the State Bank did the only thing reasonably practical for him to do at the time. He notified defendant company, in advance, of an ex-

amination of the condition of the bank, of the lump sum of shortage admitted by the cashier, and reported the matter to the State Banking Department for investigation as to particulars.

The notice was timely under the requirements of the bond. As said in National Surety Co. v. Western Pacific Railway Co. (C. C. A. Ninth Circuit), 200 F. 675:

"The words 'immediate notice,' as employed in the bond, are to be given a reasonable and practical construction, and are to be taken as requiring the plaintiff only to give notice as soon as was under all the circumstances of the case reasonably practical."

See, also, American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 22 S. Ct. 833, 46 L. Ed. 1193; Ward v. Maryland Casualty Co., 71 N. H. 262, 51 A. 900, 93 Am. St. Rep. 514; Konrad v. Union Casualty & Surety Co. of St. Louis, Mo., 49 La. Ann. 636, 21 So. 721.

[3] On March 15, 1914, when this bond was extended, there was no irregularity or shortage in the accounts of Robichaux, as cashier of plaintiff bank. For this reason, there could have been no false representations made on the subject to defendant company and no breach of warranties in this respect. The bond expressly declares the conditions under which it shall become void and under which the company shall not be liable, and breach of warranties is not included as one of these conditions. Forfeitures are not implied, and have never met with the special encouragement of courts. They must find support in law in a manner that leaves no doubt as to the right to their exercise. Lawrence v. Penn Mut. Life Ins. Co., 113 La. 92, 36 So. 898, 1 Ann. Cas. 965; Gunther et al. v. Mutual Aid Association, 40 La. Ann. 777, 5 So. 65, 2 L. R. A. 118, 8 Am. St. Rep. 554; Corporation of Roman Catholic Church v. Royal Ins. Co., 158 La. 601, 104 So. 383; Joyce on Insurance, § 220, p. 574.

We find no error in the judgment appealed from.

Judgment affirmed.