**J. S. FRAERING, Inc., Appellant,**

v.

**EMPLOYERS MUTUAL LIABILITY INSURANCE CO. OF WISCONSIN, Appellee.**

**No. 16297.**

United States Court of Appeals
Fifth Circuit.
March 28, 1957.

Thomas L. Hollis, Thomas C. Wicker, Jr., New Orleans, La., for appellant.

P. A. Bienvenu, Bienvenu & Culver, New Orleans, La., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, J. S. Fraering, Inc., is a Louisiana corporation operating a wholesale grocery business in New Orleans. It procured from the appellee insurance and bonding company an employees' fidelity bond by which the appellee agreed to indemnify the appellant "against any loss of money or other property, real or personal (including that part of any inventory shortage which the insured shall conclusively prove has been caused by the fraud or dishonesty of any employee or employees) belonging to the insured * * * ". The provisions of the bond included the following:

"This bond shall be deemed canceled as to any employee: (a) immediately upon discovery by the insured, or by any partner or officer thereof not in collusion with such employee, of any fraudulent or dishonest act on the part of such employee; * * * ".

The bond also provided:

"At the earliest practical moment, and at all events not later than fifteen days after discovery of any fraudulent or dishonest act on the part of any employee of the insured, or by a partner or officer thereof not in collusion with such employee, the insured shall give the company written notice thereof and within four months after such discovery shall file with the company affirmative proof of loss, itemized and duly sworn to * * * ".

In the early part of 1953 an audit disclosed a loss of over $16,000 during a preceding three months' period. Concluding that this loss was the result of inventory shortages, detectives were employed by the appellant and an investigation was made during the period of June 29 through July 10, 1953. The appellant refers to the result of this investigation as indicating small pilferages and theft by employees. The appellee took the position that appellant's employees' pilferage and thefts were "fraudulent or dishonest acts" within the meaning of the bond. Among the items pilfered or stolen during this period were four cases of one kind of oil and four cases of another, four bags of chopped feed, twenty cases of evaporated milk and a sack of rice in addition to lesser quantities of grocery items and to bags with unidentified contents. The investigator's

reports gave the names of the employees who had been detected in stealing. None were discharged. No notice was then given to the appellee.

The inventory losses continued and were indicated by the periodic reports. Detectives were again employed. They found that there was pilfering on a substantial scale. All but two of the employees involved in the report of the investigation in July were detected in the January investigation. Two employees were named in the January report who were not in the July report. On February 4, 1954, notice was given to the bonding company. On April 26, 1954, proof of loss was made. On October 8, 1954, suit was brought in the District Court for the Eastern District of Louisiana. Diversity of citizenship is the basis for Federal jurisdiction. By its complaint the appellant alleged it had sustained losses from theft or embezzlement by employees of over the ten thousand dollar amount specified as the amount of the bond and sought recovery of that amount plus a twelve per cent. penalty under LSA–R.S. § 22.658 for delay in payment without probable cause. The appellee bonding company answered and denied liability. A jury was empaneled and the plaintiff presented its evidence. It attempted to show that it had sustained inventory losses during the twelve months' period ending January 31, 1954, in excess of thirty-six thousand dollars. Of this the losses from August 1, 1953, through January 31, 1954, amounted to ninety-eight hundred dollars. No evidence was adduced to show how much of the loss after July had been caused by those employees who had been detected pilfering in July and how much by other employees. The defendant moved for a directed verdict at the close of the plaintiff's case. The district judge granted the motion. From a judgment for the defendant entered upon the directed verdict this appeal was taken.

In his instruction to the jury directing the verdict, the district judge stated that under the provisions of the bonds its coverage ceased after July, 1953, as to all of the employees of the plaintiff who were known to have been stealing, and since it had not and could not be shown the amount of the pilferages of those not involved in the July investigation, the defendant was entitled to a verdict.

It is the general rule that provisions in fidelity bonds which stipulate for notice of the making of proof of loss within a specified time are valid and will be upheld. This court, in a case involving a fidelity bond on a bank officer, has stated the rule and the reason for it:

"The bond was in its substance premium-paid insurance against loss. Its stipulations are analogous to those in insurance policies. It is of great importance to the surety to get prompt notice of a claim, that investigation may be made and that the misapplied property may be recovered, and that the defaulter may be proceeded against. The stipulation for notice is here associated with agreements about time limitation for suit and is introduced by the words: 'This bond is subject to the following express conditions.' The plain meaning is that the liability on the bond is conditioned on performance of what follows. There is no ambiguity to be resolved in favor of the insured. If this stipulation were a covenant whose breach is remediable by the allowance of damages, it would seldom be possible to ascertain what damage did result from not giving notice within the time limit. Stipulations for notice are common in insurance contracts and are usually enforced literally and as conditions." Murray v. American Surety Co. of New York, 5 Cir., 1934, 69 F.2d 147, 148.

There is nothing in conflict with the foregoing in the opinion in Franklin Savings & Loan Co. of Macon v. American Employers Ins. Co., 5 Cir., 1938, 99 F.2d 494. Cf. Lawson v. American Motorists Insurance Corporation, 5 Cir., 1954, 217 F.2d 724. The State of Louisiana has aligned itself with the jurisdic-

tions which enforce the provisions of fidelity bonds requiring notice. The Court of Appeals of Louisiana has said:

"We deem it quite proper that there should be in bonds of this kind a requirement that loss must be discovered within some fixed period after the stipulated expiration of the bond. Such a stipulation makes it necessary that the bondholder make an examination of his records within a reasonable time after the termination, and we do not see that any undue hardship results.

"Then, too, the bond required, as we have said, that notice be immediately given, and, since it is conceded that the first information of a possible discrepancy came to the knowledge of the Ricau Company early in January, it cannot be said that notice thereof on May 25 was 'immediate,' however liberally that word may be interpreted." George J. Ricau & Co., Inc., v. Indemnity Insurance Co. of North America, La. App., 173 So. 217, 222.

The appellant urges that this case has been overruled by the later decision of the same court in Inter-City Express Lines v. Hartford Accident & Indemnity Co., La.App., 178 So. 280, in which it was held that the obligee or insured was under no duty to give the bonding company notice of mere suspicions, but only of fraudulent or dishonest conduct on the part of an employee. In the last cited case the notice was given as soon as definite knowledge of the shortage was acquired. Here the appellant had knowledge of thefts and of a concerted course of dishonest conduct of a number of its employees which it permitted to continue for six months without giving the bonding company any notice. To the same effect is Aetna Indemnity Co. v. J. R. Crowe Coal & Mining Co., 8 Cir., 1907, 154 F. 545. The appellant would avoid the requirement for giving notice by asserting that the losses discovered in the earlier investigation were of small items. As supporting this theory it relies upon Handelman's Chain Stores v.

Maryland Casualty Co., La.App., 184 So. 827. This was a case where there was no substantial evidence on which a charge against the bonded employee could have been based, and the amount of the loss was within the usual limits of losses due to shoplifting, errors and honest mistakes.

We are asked by the appellant to hold that its failure to give notice of the earlier defalcations did not void the bond where no claim was made on account of the previous losses. As a precedent for such a rule of law we are directed to People's State Bank v. United States Fidelity & Guaranty Co., 164 La. 95, 113 So. 779, but it may be observed that in the cited case the bond provided:

"This bond will become void as to any claim for which the company would otherwise be liable if the employer shall fail to notify the company of the act or omission out of which said claim shall arise immediately after it shall come to the knowledge of the employer, * * * *"

There is a very real difference between a provision voiding the bond "as to any claim" upon failure to give the required notice and one, such as is before us, providing that the bond shall be canceled "as to any employee" upon discovery of any fraudulent or dishonest act of the employee.

The requirement that the bond is deemed cancelled as to any employee upon discovery of dishonesty is not an uncommon one. 50 Am.Jur. 1125, Suretyship § 333. It is a reasonable one. It is applicable here. The Supreme Court of Louisiana has, on two occasions recognized and tacitly approved bond provisions such as are before us although in each of the cases it was found that the employee conduct was not fraudulent or dishonest and the bond coverage was not cancelled. Bank of Commerce & Trust Co. v. Union Indemnity Co., 174 La. 1014, 142 So. 156; Curran & Treadaway v. American Bonding Co., 193 La. 763, 192 So. 335.

The operation of the clause providing for cancellation as to any employee upon the discovery of his fraudulent or dishonest acts is not dependent upon notice. The terms of this provision, like other provisions of insurance contracts, should be construed, in the absence of ambiguity, in the plain, ordinary and popular sense of the language used. Imperial Fire Insurance Co. v. Coos County, 151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231. If any of the terms are of doubtful meaning the construction most favorable to the insured will be adopted. Mutual Life Insurance Co. of New York v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235. It can hardly be doubted, however, under any construction, that the act and conduct of the appellant's employees discovered by it in July, 1953, were fraudulent and dishonest. The appellant is thus precluded from recovering for any of its loss occurring after July, 1953, resulting from thefts by any of the employees detected in pilfering by the July investigation. The appellant disavows any right to recover for losses resulting from employee thefts during or prior to July, 1953. Failure to give notice as the bond required would prevent any such recovery.

As to the losses resulting from thefts subsequent to July, 1953, by employees who were not discovered to be dishonest during the July investigation, the bonding company claims to be discharged because of lack of notice. It makes a good showing as to why it should prevail upon this ground but as the district court did not base its decision thereon we shall not further discuss the point.

The district court held that there was no way that it could be shown the extent to which the losses for the period after July had been caused by the acts of the employees covered during the period, that is, those not known to be involved in the activities of July. The bond stipulates against loss "including that part of any inventory shortage which the insured shall conclusively prove has been caused by the fraud or dishonesty of any employee or employees". There was no evidence on which there could be a measure of damages. In apt phrasing the district judge said:

"The problem is the fact that you have left employees stealing who are not covered by the bond, and by the mere fact that you left them stealing, there is no way of telling how much they stole, and how much the ones covered by bond stole. That is the real problem in the case."

We agree. The district judge properly directed a verdict for the appellee. The judgment on that verdict is

Affirmed.