ST. JOE PAPER COMPANY, Appellant,

v.

HARTFORD ACCIDENT AND INDEM-
NITY COMPANY et al., Appellees.

No. 22129.

United States Court of Appeals
Fifth Circuit.

March 28, 1967.

Further Rehearing Denied
April 18, 1967.

Chester Bedell, C. Harris Dittmar, Robert P. Smith, Jr., Jacksonville, Fla., for appellant. Bedell, Bedell, Dittmar & Smith, Jacksonville, Fla., of counsel.

Gerald Bard Tjoflat, Charles Cook Howell, Jr., William M. Howell, S. Thompson Tygart, Jr., Jacksonville, Fla., for appellees. Mahoney, Hadlow, Chambers & Adams and Howell, Dawson, Galant, Maddox & Sulik, Jacksonville, Fla., of counsel.

ON REHEARING

Before PHILLIPS,* RIVES and COLEMAN, Circuit Judges.

PER CURIAM.

The appellant's petition for rehearing was granted and the cause restored to the calendar for reargument and resubmission. Now after consideration of the additional briefs and argument, the opinion filed in this case on May 3, 1966, reported in 359 F.2d at 579 et seq., is amended as follows:

(A) The following passages in the opinion are stricken:

(1) From the fourth paragraph of Part II:

"The president remarked that, 'this is better than any glass business we have. How in the world do you work it?' Jones answered, 'you know there is

* Of the Tenth Circuit, sitting by designation.

something we will have to come up with.' Except for the identity of the actual recipient of the commissions, the arrangement involving the fictitious sales agency was explained to the president. As to who constituted the fictitious agency, and as to who was really getting the money, the president said that he did not want to know anything about it, and his wishes were obeyed."

(2) From the ninth paragraph of Part II:

"He told these new officers that it was *'a fictitious set up* that we have established to pay. We are charging a commission on the business. It is holding the business for us. It is being used * * * to maintain the business. * * * I don't like it, but I want to know whether you want to continue it'."

(3) From the long paragraph which is the ninth paragraph of Part III and the third paragraph from the end of the opinion:

"The testimony showed that St. Joe was told from the outset that Jones set up Box Sales and that it was fictitious."

(B) The date "August 5, 1960" included in the quoted instruction in the sixth paragraph of Part III is changed to "August 5, 1959."

(C) There is also stricken the seventh paragraph of Part III, which consists of a single sentence reading: "This instruc-

tion comprehends a correct statement of the law." In lieu of that sentence, there is inserted the following:

 It is not necessary to determine whether this instruction is a correct statement of the law as against any and all conceivable grounds of objection, but only whether one or more of the grounds of objection distinctly stated by the plaintiff in the district court, appellant here, should have been sustained. Rule 51, Fed.R.Civ.P. The grounds stated to the district court by the plaintiff-appellant are set forth in the margin.[1] The charge related to St. Joe Paper Company's knowledge or information prior to August 5, 1959. The fact that all of the commissions were in fact transmitted to Jones and none to Anchor Hocking or to persons connected with Anchor Hocking was not material to St. Joe's knowledge or information prior to August 5, 1959 that the commissions were being transmitted to one or the other of the three.[2] The charge was not erroneous upon any of the grounds of objection stated by the plaintiff-appellant. There was evidence from which the jury could reasonably infer that St. Joe knew or had information that Jones was keeping the commissions paid to Box Sales Agency, or that they were being transmitted by him to Anchor Hocking or persons connected with it. Hence, the factual situations covered by the instruction were not purely hypothetical, but were based upon reasonable inferences which the jury might have drawn from proven facts.

1. "We object to that charge * * * upon the ground that it tells the jury that if the plaintiff had knowledge that the commissions paid to Box Sales Agency, or part of them, were going to Anchor Hocking or officials of Anchor Hocking, that this would be a defense for the defendants, upon the ground that there is no evidence that the commissions, or any part of them, went to Anchor Hocking or any officials of Anchor Hocking.

"The evidence conclusively shows that all of the commissions went to Robert M. Jones.

"The matters referred to are the same matters that Your Honor has struck as a defense to the case. They are in part

in the evidence that Your Honor has excluded in the case on the suspicion that such might be happening to the commissions.

"It is of course impossible for the plaintiff to have knowledge that something was happening which in fact was not happening; and it is of course impossible for the plaintiff to have information that something was happening which was not in fact happening, because information is nothing more than knowledge communicated to one by another."

2. That is to Jones or to Anchor Hocking, or to persons connected with Anchor Hocking.

The said opinion filed on May 3, 1966 as thus modified is readopted as the opinion on rehearing, and the judgment is

Affirmed.

## ON PETITION FOR FURTHER REHEARING

The appellant calls attention that in addition to the grounds of objection [1] to the instruction [2] made following the charge, a further ground had been assigned earlier in a conference on proposed charges,[3] which should be considered.[4]

 We agree, but hold that the instruction was not objectionable upon that ground. In our original opinion we quoted the provisions of the policies which preclude coverage after the insured or an officer of the insured not in collusion with the employee discovers or has knowledge or information "that such Employee has committed *any* fraudulent or dishonest act in the service of the Insured or otherwise, *whether such act be committed before or after the date of the employment by the Insured*," or again, "of *any* fraudulent or dishonest act on the part of such Employee." (Emphasis added.) Those provisions are much broader than somewhat similar provisions which have been construed to limit the exclusion to fraudulent or dishonest acts which would give rise to a claim under the policy.[5] The exclusion of coverage after knowledge that the employee has committed *any* fraudulent or dis-

honest act is a reasonable and valid provision.[6] The present policies clearly and unambiguously so provide. The petition for further rehearing is

Denied.

---

1. Such grounds of objection are quoted in footnote 1 to our opinion on rehearing.

2. The instruction is quoted in our original opinion.

3. "MR. DITMAR [Plaintiff's counsel]:
 "If I may add to that, the cases establish that the only sort of fraudulent and dishonest acts, knowledge or information of which can terminate the coverage of the policy, is a fraudulent or dishonest act that would itself have given rise to a claim under the policy. That is why this Anchor Hocking thing is irrelevant, we believe."

4. Under our holding in Williams v. Hennessey, 5th Cir. 1964, 328 F.2d 490, 491.

5. For example, see provisions referred to in Bank of Erie Trust Co. v. Employers' Liab. Assur. Corp., 1936, 322 Pa. 132, 185 A. 224, 225, 104 A.L.R. 1170; Bank of Commerce & Trust Co. v. Union Indemnity Co., 1932, 174 La. 1014, 142 So. 156, 157; Fidelity & Deposit Co. v. People's Bank, 4th Cir. 1934, 72 F.2d 932, 936–937; 45 C.J.S. Insurance §§ 666, 801, pp. 604, 849.

6. J. S. Fraering, Inc. v. Employers Mutual Liability Ins. Co., 5th Cir. 1957, 242 F.2d 609.