**RITCHIE GROCER COMPANY,**
**Appellant,**

v.

**AETNA CASUALTY & SURETY COMPANY, Appellee.**

**No. 19866.**

United States Court of Appeals,
Eighth Circuit.

May 12, 1970.

J. E. Gaughan, of Gaughan, Laney, Barnes & Roberts, Camden, Ark., for appellant.

Dennis L. Shackleford, of Shackleford & Shackleford, El Dorado, Ark., for appellee.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and GIBSON, Circuit Judges.

PER CURIAM.

We affirm the judgment entered below in this suit on a contract for employee fidelity insurance for the cogent reasons expressed by the Honorable Oren Harris in his unpublished memorandum opinion, attached hereto as an appendix.

Two additional arguments, not pressed before Judge Harris, are made in this court by appellants. Neither is persuasive. First, the exclusion clause embodied in Section 7 of the insurance contract in question is neither unenforceable as against public policy nor ambiguous. See St. Joe Paper Co. v. Hartford Accident & Indemnity Co., 376 F.2d 33, 35 (5th Cir.), cert. denied, 389 U.S. 828, 88 S.Ct. 91, 19 L.Ed.2d 86 (1967); J. S. Fraering, Inc. v. Employee's Mutual Liability Insurance Co. of Wisconsin, 242 F.2d 609, 612–613 (5th Cir.1957); Verneco, Inc. v. Fidelity & Casualty Co. of New York, 207 So.2d 828 (La.Ct.App.1968), aff'd, 253 La. 721, 219 So.2d 508 (1969). Second, knowledge possessed by Joe Polk, branch manager for one of appellant's stores, that Wayne Kemp had previously committed tire theft is fully attributable to the "Insured"—appellant—within the meaning of Section 7. "A corporation must necessarily act through agents, and the general rule is that knowledge of an agent acquired in the ordinary discharge of his duties for the corporation is ordinarily to be imputed to the principal." Bank of Hoxie v. Meriwether, 166 Ark. 39, 50, 265 S.W. 642, 646 (1924). Accord, United States v. United United States Cartridge Co., 198 F.2d 456, 464 (8th Cir.1952), cert. denied, 345 U.S. 910, 73 S.Ct. 645, 97 L.Ed. 1345 (1953). It is undisputed here that Polk held unfettered authority in the personnel management of appellant's branch store. His act of hiring Wayne Kemp was certainly within the scope of that authority. It is not important whether or not Polk had actual knowledge of the scope and effect of Section 7. Appellant, as corporate signatory to the insurance contract, did have such knowledge.

Affirmed.

## APPENDIX

### MEMORANDUM OPINION

(Filed July 2, 1969, in the United States District Court for the Western District of Arkansas)

This action by the plaintiff, Ritchie Grocer Company, was originally brought in state court, Circuit Court of Union County, Arkansas, Second Division, against the defendant, Aetna Casualty & Surety Company, for the recovery of loss sustained by the plaintiff as a result of money shortage by the action of one of the plaintiff's employees, Wayne Kemp, during a period of time from about June 1966, until November, 1967. It was removed from the state court to the United States District Court, El Dorado Division, on petition by the defendant, the amount exceeding the sum

of $10,000 exclusive of interest and costs and by reason of diversity of citizenship between the parties. Jurisdiction is not questioned.

On motion for leave to amend petition for removal the Court entered an order permitting the amendment to the petition for removal to the effect that defendant, Aetna Casualty and Surety Company, is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut, and the plaintiff, Ritchie Grocer Company, is a corporation organized under the laws of the State of Arkansas and its principal place of business in El Dorado, Arkansas, in technical compliance with jurisdictional requirements for diversity of citizenship. Jurisdiction is established.

The Court has this matter for consideration on motion for summary judgment by both parties in that there is no genuine issue of any material facts and that judgment should be determined as a matter of law. Both parties have filed briefs and reply briefs.

This action is based on a contract of insurance issued by the defendant to the plaintiff under date of March 26, 1965. The relevant provisions of the contract are as follows:

"The Company, in consideration of the payment of the premium, and subject to the Declarations made a part hereof, the General Agreements, Conditions and Limitations and other terms of this Policy, agrees with the Insured to pay the Insured for:

"INSURING AGREEMENTS.

"*Employee Dishonesty Coverage.*

"I. Loss of Money, Securities and other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others."

And the following provision, to-wit:

"*The Foregoing Insuring Agreements and General Abatements Are Subject to the Following Conditions and Limitations:*

"*Prior Fraud, Dishonesty or Cancelation.*

"Section 7. The coverage of this Policy shall not apply to any Employee from and after the time that the Insured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employees has (sic) committed any fraudulent or dishonest act in the service of the Insured or otherwise, whether such act be committed before or after the date of employment by the Insured."

The facts are not in dispute. The plaintiff, Ritchie Grocer Company, is engaged in the wholesale grocery business with a branch office at DeQueen, Arkansas. The plaintiff employed Wayne Kemp upon application filed with the company about December, 1965. Joe Polk is the manager of the DeQueen office with full authority to act on behalf of the company. After application for employment by Wayne Kemp, and before becoming employed, the manager, Joe Polk, made an inquiry of the Sheriff Louie L. Hilton about Kemp as to Kemp's reputation and being trustworthy as an employee. On such inquiry Sheriff Hilton advised Polk that some time about April, 1965, Wayne Kemp and two other boys broke into a garage or filling station in the vicinity of Kirby, Arkansas, and took some tires and money. It is not revealed how many tires or how much money was stolen after the break in of the business. Neither is it indicated what time of the day the burglary and theft took place, but there is strong inference that it occurred in the nighttime.

Sheriff Hilton discussed the incident with Mr. Joe Polk, Manager of Ritchie Grocer Company, and told him what he knew about it, including the arrest and the hearing before the court in Clark County. Sheriff Hilton advised that the boys were detected at the time they broke into the filling station. He was

notified and picked up the boys and the tires they stole from the service station. He advised that the tires were returned to the owners and the boys were turned over to the authorities in Clark County at Arkadelphia. Sheriff Hilton also advised Mr. Polk that he had discussed the incident with the Sheriff of Clark County and it was felt that this was a case where teenage boys had made a mistake and the charges had been dismissed.

In his deposition taken on the 14th day of November, 1968, Mr. Polk after describing his duties as branch manager with full authority, to act in carrying on the affairs of the business, stated that Sheriff Hilton told him about the difficulty Harold Wayne Kemp had with "law violation".

Questions by Mr. Shackleford and Answers by Joe Polk:

"Q. What did you learn about that? A. He said there were three boys in a car had taken some tires; but he was a boy who'd admitted his mistake; that he and the sheriff in Clark recognized it as a mistake and wanted to give them a break, and the charges were dismissed by the judge. The judge looked at it the same way. The way I looked at the thing, the thing was dismissed; it was a mistake.

\* \* \* \* \* \*

Q. You learned, though, that he had been involved in the theft of tires from ———— A. I did.

\* \* \* \* \* \*

Q. Well, then you did understand that criminal charges were filed against him? A. Well, I guess it would have to be charged to be dismissed, but I understood it was all dismissed."

Mr. Polk stated further that he learned of this information from Sheriff Hilton before he employed Kemp. Mr. Polk also admitted that he did not check this incident of the burglary and theft with any one else and stated that if the judge had dismissed it, "that was good enough for me. That's the way I took it".

There is no question but what Wayne Kemp and two other boys broke into this place of business and took some tires and money. There is no question but what Mr. Polk acting in the scope of his authority learned of and had information that Wayne Kemp and these two boys had entered the place of business and took the tires and money. There is no question about the arrest of Kemp and the hearing on two different occasions before the Circuit Judge of Clark County. Even though Mr. Polk was informed of this he accepted it as did the officers as a mistake and wanted to give the boys a break. With this knowledge and information Mr. Polk employed Wayne Kemp as a truck driver for the plaintiff, Ritchie Grocer Company.

Therefore, the only question that remains in this proceeding is whether or not the act of breaking and entering the business by Wayne Kemp and the other two boys and taking the tires and money is a fraudulent or dishonest act.

The plaintiff contends that this exclusionary provision is ambiguous and therefore should be construed favorable to the plaintiff. It is not contended that the provision should be declared invalid as contrary to public policy.

■ The Court agrees with the contention of counsel for the plaintiff that the policy should be construed most favorable to the insured and against the insurer. Numerous decisions are cited in support of this well-established rule. However, no decision is cited by the plaintiff on the construction of the exclusionary clause relevant to this question.

The identical clause at issue was considered recently by the United States Court of Appeals of the Fifth Circuit. Referring to the language which precludes coverage the court said:

"Those provisions are much broader than somewhat similar provisions which have been construed to limit the exclusion to fraudulent or dishonest acts which would give rise to a claim under the policy. The exclusion of

coverage after knowledge that the employee has committed *any* fraudulent or dishonest act is a reasonable and valid provision. The present policies clearly and unambiguously so provide." St. Joe Paper Co. v. Hartford Accident & Indemnity Co., 376 F.2d 33 (1967) See footnotes 5 and 6 for citations.

■ Therefore, it is the opinion of the Court that the exclusionary clause referred to in this case is reasonable and valid. As construed by the Fifth Circuit in the St. Joe Paper Co. case, *supra*, the language is clear and unambiguous.

The only remaining question is whether or not the act of unlawfully entering the garage or service station by Wayne Kemp and taking some tires and money was a fraudulent or dishonest act.

Fraudulent as defined by Black's Law Dictionary, Fourth Edition: "An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right; a false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury."

This definition is generally accepted and appears to be incorporated in innumerable cases cited by the courts which seems to me requires no further reference.

The late Mr. Justice Cardozo in construing an act to be "dishonest" within the meaning of a fidelity suretyship bond stated there must exist an element of moral turpitude or want of integrity. He declared: "Dishonesty, unlike embezzlement or larceny, is not a term of art. Even so, the measure of its meaning is not a standard of perfection, but an infirmity of purpose so opprobrious or furtive as to be fairly characterized as dishonest in the common speech of men." Commercial Banking Corp v. Indemnity Ins. Co. of North America, et al., 1 F.R.D. 380.

After approximately six months as an employee of the plaintiff Wayne Kemp was transferred from the position of truck driver to the office. In this new position he handled deposits of various accounts and assisted in posting of the books and keeping the records.

The plaintiff contends that during the ensuing eighteen months Wayne Kemp, as its employee, appropriated to his personal use the sum of $17,486.20. Except for the exclusionary clause of the policy the plaintiff could no doubt recover the loss it sustained by the acts of its employee Wayne Kemp. If the act of entering the business and taking the tires and money some six months prior to becoming employed by the plaintiff is determined to be a fraudulent or dishonest act, the plaintiff could not recover the loss from the defendant since the plaintiff's manager, Mr. Polk, had knowledge and information that such act had been committed.

■■ It is common knowledge that the breaking and entering and the taking of property belonging to another without the consent of the owner is contrary to law. In this instance several tires were taken. They were sold and the money divided between them. Kemp in his deposition, stated that they got between $30.00 and $40.00, which was also divided between them. Apparently Mr. Polk did not know of the number of tires stolen or the amount of money taken and neither did he consider it of sufficient importance to find out. The Court takes judicial notice that the unlawful entering of a building and the taking of property is burglary and larceny subject to the penalty of the law.

Whether the officers performed their duty in the enforcement of the law in this instance is not a question for this Court to determine. Even though Wayne Kemp and the other two persons with him in the unlawful act entered pleas of guilty to the court there may have been mitigating circumstances which persuaded the court to refrain from imposing the penalty of the law. The court did lecture the parties and

emphasized to them the seriousness of the act. They were advised that they were being given a break and if they conducted themselves in a lawful manner in the future they would not be prosecuted. Nevertheless, this in no way affected the question of whether or not the act itself committed by Kemp and of which Mr. Polk had knowledge and information prior to his employment was a fraudulent or dishones'. act.

The Court is, therefore, constrained to hold under the circumstances as related herein there is no material question of fact and that the act committed by Wayne Kemp of unlawfully entering the garage or service station and taking the tires and money prior to becoming an employee of the plaintiff was a dishonest act that would come within the provision of the exclusionary clause of the policy and since the plaintiff's manager, Mr. Joe Polk, had knowledge and information of the incident, the motion of the defendant for summary judgment will be granted. An order will be entered accordingly.

OREN HARRIS,
United States District Judge.