**FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant,**

v.

**CENTRAL BANK OF HOUSTON, Appellee.**

**No. C14–82–575CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 26, 1984.

Robert M. Hardy, Jr., Butler, Binion, Rice, Cook & Knapp, Houston, for appellant.

Robert L. Rouner, Bracewell & Patterson, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

### OPINION

JUNELL, Justice.

On motions for rehearing filed by both appellant and appellee, the court's opinion issued on April 26, 1984, is withdrawn and the following opinion is substituted therefor.

This is a suit by appellee, Central Bank of Houston, to recover under a fidelity bond issued by appellant, Fidelity & Casualty Company of New York, for loan losses resulting from dishonest acts of appellee's former president, Joseph P. DeLorenzo. Judgment was entered in favor of appellee against appellant and Joseph DeLorenzo after the trial court granted appellee's motion to disregard certain findings of the jury relating to affirmative defenses raised by appellant. We reverse and render in part.

■ At trial appellant did not dispute that the losses in question resulted from the dishonesty of DeLorenzo. Appellant's defense was that under Section 11 of the bond, coverage as to DeLorenzo terminated before the losses occurred because appellee had discovered prior dishonest acts by DeLorenzo. Section 11 of the bond states:

> This bond shall be deemed terminated or cancelled as to any Employee—(a) as soon as the insured shall learn of any dishonest or fraudulent act on the part of such Employee...

The validity of this type of provision is well established. *Ritchie Grocer Co. v. Aetna Casualty & Surety Co.*, 426 F.2d 499, 502–504 (8th Cir.1970); *St. Joe Paper Co. v. Hartford Accident and Indemnity Co.*, 376 F.2d 33, 35 (5th Cir.1967).

In its answer to special issue number sixteen the jury found that the directors of appellee learned before December 11, 1974 of a dishonest act on the part of DeLorenzo in connection with the Jackson loans. This finding would have entitled appellant to judgment on its affirmative defense under section 11 of the bond, except that the trial court set aside this finding as unsupported by the evidence. Rule 301 of the Texas Rules of Civil Procedure authorizes the trial court to disregard a jury's answer to a special issue if the record contains no evidence of probative value to warrant submission of the issue. Appellant contends in its points of error two and three that such action by the trial court was error because the record contains some evidence supporting the jury's answer.

■ To find the trial court's disregard of the jury's answer to issue sixteen erroneous, we must find some evidence that before December 11, 1974, appellee's board of directors had knowledge of facts from which they could have reasonably inferred that DeLorenzo had acted dishonestly in connection with the Jackson loans. The record shows that the board of directors had knowledge of the following facts before December 11, 1974: 1) that a Mr. A.T. Jackson had substantial loans outstanding at the bank; 2) that DeLorenzo was a member of the executive loan committee which approved these loans; 3) that DeLorenzo and Mr. Jackson were partners in trading securities and 4) that DeLorenzo did not disclose his relationship with Mr. Jackson to the directors. The issue facing this Court is whether DeLorenzo's involvement with the approval of the loans to Jackson, while not disclosing his trading partnership with Jackson, constitutes a dis-

honest act under the meaning of Section 11 of the bond.

The court in *First National Bank v. Insurance Co. of North America*, 606 F.2d 760, 768–69 (7th Cir.1979), set forth the following standard for defining dishonesty under a banker's blanket bond.

The words "dishonest" and "fraudulent" used with reference to conduct covered by a fidelity bond are to be given a broad meaning. *Citizens State Bank v. Transamerica Insurance Company*, 452 F.2d 199, 203 (7th Cir.1971); *Elgin National Bank v. Home Indemnity Co.*, 583 F.2d 1281 (5th Cir.1978). Their connotation is broader and more comprehensive than the word "criminal"; and they include acts which show a want of integrity or breach of trust. *Arlington Trust Co. v. Hawkeye-Security Insurance Co.*, 301 F.Supp. 854, 857–858 (E.D.Va.1969). Conduct may be fraudulent and dishonest within the meaning of a banker's blanket bond even though it falls short of a criminal offense. *First National Bank of Sikeston v. Transamerica Insurance Co.*, 514 F.2d 981, 987 (8th Cir. 1975).

Thus it has been held that where a bank employee creates a conflict of interest, looks after his own benefit, or acts in disregard of his employer's interests, subjecting the employer to a likelihood of loss, he is acting fraudulently and dishonestly within the meaning of a fidelity bond. *Boston Securities, Inc. v. United Bonding Insurance Co.*, 441 F.2d 1302, 1304 (8th Cir.1971). A bank's assistant vice-president, in charge of an installment loan department, who approves a customer loan which exceeds authorized limits, and permits the customer to use names of other individuals as borrowers, commits a dishonest and fraudulent act within the meaning of the banker's blanket bond. *Miami National Bank v. Pennsylvania Insurance Co.*, 314 F.Supp. 858 (S.D.Fla.1970).... So it goes without saying that it is dishonest for the president of a bank to secretly obtain its funds putting forth others as being worthy of credit. *Maryland Cas-*

*ualty Co. v. American Trust Co.*, 71 F.2d 137, 138 (5th Cir.1934).

We find DeLorenzo's conduct in these circumstances to come within the meaning of the term "dishonest". DeLorenzo, by his participation in the approval of loans to Mr. Jackson, with whom he had a stock trading partnership, clearly created a conflict of interest. DeLorenzo indirectly benefited from the loans to Jackson either by making bank funds available to the investment partnership, or by improving Jackson's ability to participate in the trading of the partnership. DeLorenzo's conduct raised a serious question as to whether he was seeking to advance his own interests over the interests of the bank. This in our opinion amounts to conduct which shows a want of integrity or breach of trust. Thus, we conclude that there is some evidence to show that the board of directors had knowledge of facts before December 11, 1974 from which they could reasonably infer that DeLorenzo had acted dishonestly in connection with the Jackson loans.

■ Appellee in its reply point to appellant's points of error two and three, in addition to contending that the trial court's setting aside of the jury's answer to issue sixteen was correct because there was no evidence to support the jury's answer, also contends that this action was correct because issue sixteen was not supported by the pleadings.

We first note that under Rule 324 of the Texas Rules of Civil Procedure appellee should have assigned its no pleadings contention as a cross-point instead of as a reply point. After the verdict was rendered, appellee made a Rule 301 motion to disregard the jury's answer to special issue sixteen as unsupported by the pleadings and the evidence. The trial court granted judgment n.o.v. in favor of appellee and stated in its judgment that special issue sixteen had no support in the evidence without any reference to appellee's no pleadings contention. Where it appears that the trial court did not find special issue sixteen to be unsupported by the

pleadings, the appellee should have brought forward by cross-point its no pleadings contention as a ground which would vitiate the verdict.

However, we choose to give appellee's brief a liberal construction under TEX. REV.CIV.P. 420 and consider appellee's no pleadings reply point as a cross-point under Rule 324. We find appellee's mislabeling of its point has not resulted in confusion of appellee's arguments and authorities contained thereunder. *The City of Corpus Christi v. Davis*, 575 S.W.2d 46 (Tex.Civ. App.—Corpus Christi 1978, no writ). *Texas Department of Public Safety v. Bonds*, 493 S.W.2d 275 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ); *Harris v. Texas Employers' Insurance Association*, 447 S.W.2d 211 (Tex.Civ.App.—Beaumont 1969, writ ref'd n.r.e.). Appellant's First Amended Answer states in part:

> Pleading further if same be necessary, Defendant would show that prior to the occurrence of the alleged losses made the basis of Plaintiff's suit, Plaintiff learned of certain acts of dishonesty on the part of Defendant DeLorenzo, as that term is defined by the Standard Form 24 bankers blanket bond upon which Plaintiff brings this action (herein the "Bond"). Upon learning of those acts, coverage as to Defendant DeLorenzo, immediately terminated. Specifically, in August of 1974 DeLorenzo, Plaintiff, and a customer of Plaintiff, A.F. Jackson, III were indicted for violation of the federal securities laws being charged with securities fraud for trading on insider information. DeLorenzo, Plaintiff and Jackson entered into a consent decree whereby they agreed to repay the profits earned illegally and to refrain from further inside trading.
>
> Furthermore, in 1974 officers and directors of the Bank learned that DeLorenzo had been indicted for criminal rape and had pled guilty to a charge of aggravated assault against the victim involved.
>
> Also, in early 1973 DeLorenzo cosigned a note borrowing funds from Saratoga Development Corporation, a customer of Central National Bank. The note was executed in connection with the purchase of Navarro Savings & Loan in Corsicana, Texas by DeLorenzo, and others, in partnership with Dennis Wittman, president of Saratoga. Neither this loan from Saratoga, nor the partnership venture with Wittman were disclosed to the Board of Directors, the F.D.I.C. and the Comptroller of Currency as required by law. John Coffee, Chairman of the Board of Plaintiff at the time, and Marvin Nathan, the Plaintiff's corporate attorney, knew of these transactions, and were aware of the fact that DeLorenzo failed to disclose the loan and partnership interest. Therefore, Plaintiff had knowledge of these additional acts of dishonesty on the part of DeLorenzo.

Appellant alleged three specific acts of dishonesty by DeLorenzo of which appellee learned: 1) illegal inside trading; 2) rape and aggravated assault; and 3) conflict of interest in the Saratoga loan. Special issue sixteen inquired as to whether the Board of Directors of appellee learned of DeLorenzo's dishonesty in connection with the Jackson loans on October 24, 1974. The dishonest act of DeLorenzo in having a secret trading partnership with Jackson while approving loans from the Bank to Jackson and the trading partnership is separate and distinct from the three dishonest acts pled by appellant. Therefore, special issue sixteen is not supported by the pleadings.

Appellant cannot rely on its general allegation that appellee learned of certain acts of dishonesty. It is well settled that if a party pleads generally and goes further and pleads specifically and particularly on the same subject, he cannot rely upon the general allegations, but is confined to those specifically pleaded. *Monsanto Co. v. Milam*, 494 S.W.2d 534 (Tex. 1973); *Richardson v. First National Life Insurance Company*, 419 S.W.2d 836, 839 (Tex.1967).

Appellant argues that its own pleadings need not be sufficient to support issue sixteen, if appellee's pleadings raise the issue. *American Casualty & Life Co. v.*

*Mason,* 244 S.W.2d 691, 694 (Tex.Civ.App. —Fort Worth 1951, writ ref'd n.r.e.). While appellee's pleadings allege the dishonesty of DeLorenzo's failure to disclose the Jackson trading partnership, they do not raise the issue of when appellee learned of this dishonest act. Thus, appellee's pleadings are not adequate to raise the issue contained in special issue sixteen.

■ Although special issue sixteen is not supported by the pleadings, the parties tried this issue by implied consent. Rule 67 of the Texas Rules of Civil Procedure states that "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 274 of the Texas Rules of Civil Procedure requires a party objecting to the charge to point out distinctly the matter and grounds of the objection and provides that any defect, omission, or fault in the pleading shall be deemed waived unless specifically included in the objections. Absent either timely objection to the evidence or to the special issue prior to submission, the pleading issue is waived and it is presumed that the issue is tried by implied consent. *Damron v. C.R. Anthony Co.,* 586 S.W.2d 907 (Tex.Civ.App.— Amarillo 1979, no writ). Rule 90 of the Texas Rules of Civil Procedure states "every defect, fault or omission in pleading which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court, before the charge to the jury, shall be deemed to have been waived. *Medical Personnel Pool of Dallas, Inc. v. Seale,* 554 S.W.2d 211 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.).

The evidence supporting the jury's answer to special issue sixteen was not objected to by appellee and was in part offered by appellee. While appellee objected to the submission of special issue sixteen, it did so on a ground different from the defect existing in the pleadings. Appellee objected to special issue sixteen on the basis that issue sixteen related to the affirmative defense that the bond was void

ab initio and that the pleadings did not allege this defense. The actual defect in the pleadings is that they failed to include DeLorenzo's involvement in the loans to the Jackson trading partnership as one of the dishonest acts which appellee had learned about. Appellee is presumed to have tried special issue sixteen by consent, having neither objected to the evidence supporting the issue or pointing out distinctly the defect existing in appellant's pleadings before submission of the charge to the jury.

■ Appellee additionally contends that special issue sixteen forms the basis for appellant's void ab initio defense, and that it was error to submit special issue sixteen because there were no pleadings to support that defense. However, special issue sixteen was not based on the void ab initio defense. The jury's answer to special issue sixteen did not absolve appellant of liability for losses occurring after October, 1974 because the renewal bond which was issued December 11, 1974 was void from its inception. Rather, appellant is absolved of liability for these losses because a renewal policy does not reinstate coverage for an employee that had already been terminated by a known dishonest act; it simply continues whatever coverage existed at the time of renewal. To hold otherwise would be contrary to the principle that an insurer does not agree to insure a bank from losses caused by an officer known to be dishonest prior to the losses. *Ritchie Grocer Co. v. Aetna Casualty & Surety Co.,* 426 F.2d 499 (8th Cir.1970). It was unnecessary for appellant to plead a void ab initio defense. It may rely upon its bond termination defense which was pled in part and tried by consent in part.

We hold that the trial court's disregard of and failure to render judgment in harmony with the jury's answer to special issue sixteen to be error because this issue was tried by consent and the jury's answer has support in the evidence.

Appellant alleges in its first point of error that the trial court erred in disregarding the jury's answer to special issue num-

ber seventeen as unsupported by the evidence. Special issue seventeen, which was answered affirmatively by the jury, asks:

Do you find that the Board of Directors of the Bank effectively relinquished its authority to control the Bank's business to Jack Josey, John Coffee, Robert Park, Joseph DeLorenzo, and Stanley Lipman as individuals?

This issue is related to whether knowledge of an alleged dishonest act on the part of DeLorenzo could be imputed to appellee so as to terminate bond coverage under section 11 as to DeLorenzo before the losses in question occurred. Appellee argues for a number of reasons that special issue seventeen is immaterial. We need not address these arguments, because we conclude that the jury's answer to issue seventeen had no support in the evidence and that the trial court did not err in disregarding this issue under Rule 301 of the Texas Rules of Civil Procedure.

The evidence which appellant asserts as supportive of issue seventeen is as follows. John Coffee was chairman of appellee's board of directors. In April of 1974, because of a significant transfer of appellee's stock, John Coffee acquired sufficient voting power over appellee's stock to elect a majority of the directors. Appellant asserts that John Coffee's acquisition of power to control the business of the bank through election of directors somehow effectuated relinquishment of directorship authority to him. We disagree. A stockholder's power to elect directors does not mean that he possesses the authority of the director's office. Although a director of a corporation represents the interests of the stockholders, the directorship authority belongs to the director. There is no evidence which suggests that any of the directors of appellee surrendered their directorship authority or responsibility to the persons listed in issue seventeen. In fact, the evidence shows that the board of directors continued to meet and exercise its authority throughout the time during which this lawsuit arose. We therefore overrule appellant's first point of error.

Appellant alleges in its fourth point of error that the trial court erred in entering judgment for appellee since the jury's answers to special issues numbers nineteen and twenty established that the bond sued upon by appellee was void when issued. Both of these issues were answered affirmatively by the jury. Special issue nineteen asked:

Do you find that Jack Josey, John Coffee, Robert Park, Joseph DeLorenzo, and Stanley Lipman were the principals of the Texas South Coast Agency?

Special issue twenty asked:

Do you find that anyone acting on behalf of the Texas South Coast Agency knew of DeLorenzo's involvement with Wittman and Saratoga in connection with the purchase of Navarro Savings and Loan or the purchase of the Josey control group stock in the Bank?

During trial appellant attempted to prove that Messrs. Josey, Coffee, Park, DeLorenzo, and Lipman were the principals of Texas South Coast Agency. The appellee intended to call Mr. Schmidt to controvert appellant's position. However, Mr. Schmidt was ill and not available to testify. Rather than delay trial, counsel for appellee and appellant stipulated that in the event the jury answered special issue nineteen in the affirmative and appellee later requested that Mr. Schmidt be permitted to testify about the ownership of Texas South Coast Agency the court would disregard special issues nineteen and twenty, hear Mr. Schmidt's testimony, and then decide these issues.

Pursuant to the stipulation, the trial court proceeded to try these issues after the jury was dismissed when appellee later called Mr. Schmidt to testify before the court. Mr. Schmidt testified that he and Mr. Roger Klein were the principals and sole owners of Texas South Coast Insurance Agency. There was no evidence to indicate that either Mr. Schmidt or Mr. Klein had knowledge of DeLorenzo's involvement with Saratoga in connection with purchase of Navarro Savings. Thus, appellee, through the testimony of Mr. Schmidt, presented the trial court with probative

evidence that special issues nineteen and twenty should be answered in the negative.

But the trial court did not make any written or oral findings on special issues nineteen and twenty. Because appellant did not request a written finding by the trial court on these issues under Rule 296 of the Texas Rules of Civil Procedure, they are deemed to support the judgment granted in favor of appellee. *Lassitter v. Bliss,* 559 S.W.2d 353 (Tex.1977); *Buchanan v. Byrd,* 519 S.W.2d 841 (Tex.1975). We recognize that Rule 296 was intended to apply to trial by the court, and not to trial by jury. This cause was tried in part by the jury and in part by the court. Rule 296 operates in the part tried by the court. Accordingly, we overrule appellant's fourth point of error because the trial court is deemed to have found against appellant's affirmative defense raised under issues nineteen and twenty, and there is evidence in the record to support these deemed findings.

In its last point of error appellant contends that the trial court erred in awarding prejudgment and postjudgment interest at the rate of 10% which exceeds the 6% prejudgment rate prescribed by Tex.Rev.Civ. Stat.Ann. art. 5069–1.03 (Vernon 1982–83 Supp.) and the 9% postjudgment rate prescribed by Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Vernon 1982–83 Supp.).

We hold that the trial court erred in awarding postjudgment interest in excess of 9% as specified by Article 5069–1.05. The trial court does not have discretion to award postjudgment interest in excess of the legal rate. *Malone v. Federal Deposit Ins. Corp.,* 611 S.W.2d 855, 859 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

Article 5069–1.03 states:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts...

This cause was a contract action and no interest rate was specified; therefore Article 5069–1.03 allows for 6% prejudgment interest in this cause. Appellee, however, contends that the trial court, on the basis of the Supreme Court's holding in *Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480 (Tex.1978), could have awarded prejudgment interest not only pursuant to the statute, but also under the equitable principle that one should be compensated for the unauthorized use of his money. Appellee further contends that if the trial court chooses to award interest under an equitable theory it is not limited to the statutory rate, but has discretion to award a higher rate if the evidence warrants it. See *Larcon Petroleum, Inc. v. Autotronic,* 576 S.W.2d 873 (Tex.Civ.App. —Houston [14th Dist.] 1979, no writ).

The Supreme Court has not yet addressed the issue of whether a trial court which awards prejudgment interest on the equitable theory discussed in *Phillips* has discretion to award interest at a rate in excess of the rate authorized by the statute. *Maxey v. Texas Commerce Bank of Lubbock,* 580 S.W.2d 340, 341 (Tex.1979). We take no position on this issue because even if we assume that Texas law permits the trial court to exercise this kind of discretion, the trial court in this cause erred in choosing to exercise this discretion. The record contains no evidence as to the market rates of interest during the period for which prejudgment interest was awarded. Historic market interest rates are not a proper subject for judicial notice. Therefore, the trial court had no basis in the record to award interest at the rate of 10%. When a trial court is not provided with a basis on which to exercise discretion as to the rate of prejudgment interest, it should apply the statutory rate of 6% under Article 5069–1.03.

We find the trial court erred in its award of prejudgment and postjudgment interest at the rate of 10%, and hold that prejudgment interest is to be assessed at the rate of 6% under Article 5069–1.03, Tex.Rev.Civ. Stat.Ann. (Vernon 1982–83 Supp.) and that postjudgment interest is to be assessed at the rate of 9% under Article 5069–1.05, Tex.Rev.Civ.Stat.Ann. (Vernon 1982–83 Supp.).

Having found that the trial court erred in disregarding the jury's answer to special issue sixteen, we reverse the trial court's judgment and render a judgment which is in harmony with the jury's verdict with special issue sixteen included as a part of that verdict.[1] The jury's answer to issue sixteen requires this Court to hold that the bond coverage terminated under section 11 of the bond as to DeLorenzo on December 11, 1974, and appellant is not liable for any losses resulting from the dishonesty of DeLorenzo occurring after December 11, 1974. Appellant is only liable for the loss found by the jury of a $200,000 loan on July 22, 1974 before the bond coverage terminated on December 11, 1974.

We reverse the judgment in favor of Central Bank of Houston against The Fidelity & Casualty Co. of New York. We render the judgment which the trial court should have rendered: that Central Bank of Houston shall recover from The Fidelity & Casualty Co. of New York the principal amount of $200,000.00, together with interest thereon at the rate of 6% per annum from July 22, 1974 to July 12, 1982, in the amount of $95,671.23, the total amount of the judgment being $295,671.23, with interest on the unpaid amount of this judgment at the rate of 9% per annum from July 12, 1982 until paid in full. The remainder of the judgment is affirmed.

---

1. We do not have the option to remand in this situation because appellee did not raise the issue of the factual sufficiency of the evidence in support of the jury's answer to special issue sixteen in a cross-point. Tex.R.Civ.P. 324.